Diana Tabacopoulos (SBN 128238)
*dtabacopoulos@seyfarth.com*
Jill A. Porcaro (SBN 190412)
*jporcaro@seyfarth.com*
SEYFARTH SHAW LLP
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Nolan R Theurer (SBN 323563)
*ntheuer@seyfarth.com*
SEYFARTH SHAW LLP
560 Mission Street, Suite 3100
San Francisco, California 94105-2930
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendant
GATE GOURMET, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES SCOTT, an individual; BRENDA MCCOY, an individual; DOMINIQUE FERDINAND, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GATE GOURMET, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:20-cv-11033<br><br>**DEFENDANT GATE GOURMET, INC.' S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. § 1331, 1332(a), 1441 and 1446**<br><br>*[Filed concurrently with Certification of Interested Parties, Civil Cover Sheet, Corporate Disclosure Statement and Declaration of William McGowan]*<br><br>[Los Angeles Superior Court Case No. 20STCV41416]<br><br>Complaint Filed:   October 27, 2020<br>Trial Date:        None |

DEFENDANT GATE GOURMET'S NOTICE OF REMOVAL

67003428v.1

# TABLE OF CONTENTS

I.      BACKGROUND ........................................................................................1

II.     TIMELINESS OF REMOVAL ...............................................................2

III.    JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT........3

    A.      There Is Minimal Diversity For Removal Under CAFA. ................3

            a.      Plaintiffs Are Citizens of California. ....................................3

            b.      Defendant Is Not A Citizen of California. .............................4

            c.      Doe Defendants' Citizenship Must Be Disregarded..............5

            d.      Defendant Is Not A Governmental Entity. .............................6

    B.      The Number of Putative Class Members Exceeds 100....................6

    C.      The Amount in Controversy Exceeds $5,000,000.00. .....................6

            a.      Plaintiffs' Claims for Recovery of Back Pay Easily Exceeds
                    $5,000,000...............................................................................8

            b.      Plaintiffs' Prayer for Emotional Distress, Punitive Damages,
                    Attorney's Fees and Injunctive Relief Also Establish the
                    Amount in Controversy Exceeds $5,000,000. ........................9

IV.     FEDERAL QUESTION JURISDICTION ...............................................10

V.      VENUE......................................................................................................14

VI.     NOTICE OF REMOVAL..........................................................................14

VII.    PRAYER FOR REMOVAL.....................................................................14

DEFENDANT GATE GOURMET'S NOTICE OF REMOVAL

67003428v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abada v. Charles Schwab & Co.*,
300 F.3d 1112 (9th Cir. 2002) ............................................ 13

*Abrego v. Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006) ................................................ 5

*Adams v. American Family Mutual Insurance Company*,
2013 WL 12058059 (S.D. Iowa Nov. 8, 2013.) ................................... 9

*Armstrong v. Church of Scientology Int'l*,
243 F.3d 546 (9th Cir. 2000) ................................................ 3

*Conrad Assocs. v. Hartford Accident & Indem. Co.*,
994 F. Supp. 1196 (N.D. Cal. 1998) ......................................... 9

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) .......................................................... 7

*Davenport v. Mut. Benefit Health & Accident Ass'n*,
325 F.2d 785 (9th Cir. 1963) ................................................ 9

*Empire HealthChoice Assur., Inc. v. McVeigh*,
547 US 677 (2006) .......................................................... 13

*Emrich v. Touche Ross & Co.*,
846 F.2d 1190 (9th Cir. 1988) .............................................. 5

*Exxon Mobil Corp. v. Allapattach Servs., Inc.*,
545 U.S. 546 (2005) ........................................................ 10

*Fristoe v. Reynolds Metals Co.*,
615 F.2d 1209 (9th Cir. 1980) .............................................. 5

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*,
545 US 308 (2005) .......................................................... 12

*Hertz Corp. v. Friend*,
130 S.Ct. 1181 (2010) ..................................................... 4, 5

*Kanter v. Warner-Lambert Co.*,
265 F.3d 853 (9th Cir. 2001) ............................................... 3

*Kantor v. Wellesly Galleries, Ltd.*,
704 F.2d 1088 (9th Cir. 1983) .............................................. 3

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999) ........................................................ 2

ii

*Richmond v. Allstate Ins. Co.*,
    897 F. Supp. 447 (S.D. Cal. 1995) ........................................................ 9

*Rivet v. Regions Bank of Louisiana*,
    522 U.S. 470 (1998)............................................................................. 13

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*,
    602 F.3d 1087 (9th Cir. 2010) .............................................................. 3

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009)............................................................................... 13

*Zavala v. Deutsche Bank Trust Co. Americas*,
    2013 WL 3474760 (N.D. Cal. July 10, 2013) ....................................... 4

**Federal Statutes**

28 U.S.C. § 84(c)(2)............................................................................... 14

28 U.S.C. § 1331 ........................................................................... 1, 10, 12

28 U.S.C. § 1332................................................................................ *passim*

28 U.S.C. § 1367.................................................................................... 13

28 U.S.C. § 1441 ........................................................................... 1, 10, 14

28 U.S.C. § 1441(a) ............................................................................. 3, 10

28 U.S.C. § 1446................................................................................ *passim*

Class Action Fairness Act ................................................................ *passim*

**State Statutes**

Business and Professions Code § 17200 ............................................ 1, 12

CARES Act ...................................................................................... *passim*

CARES Act, Title IV, Subtitle B, section 4111 ................................... 10

Second Cause of Action for Violation of the Unfair Competition Law ... 12

Unfair Competition Law ............................................................... 1, 7, 8, 9

**Rules**

Federal Rules of Civil Procedure Rule 23 ............................................. 6

**Regulations**

Sen. Jud. Comm. Rep, S. Rep. No. 109-14................................................ 7

67003428v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that Defendant Gate Gourmet, Inc. ("Defendant" or "Gate Gourmet") hereby removes the above-captioned case from the Superior Court of the State of California, County of Los Angeles to the United States District Court for the Central District of California, asserting original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, on the basis of: (1) original jurisdiction under the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2) and; (2) original federal subject matter jurisdiction under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act under 28 U.S.C. § 1331. The removal is proper for the following reasons:

## I. BACKGROUND

1. On October 27, 2020, Plaintiffs Charles Scott, Brenda McCoy and Dominique Ferdinand ("Plaintiffs") filed a class action complaint in the Los Angeles County Superior Court in the State of California entitled *CHARLES SCOTT, an individual; BRENDA MCCOY, an individual; DOMINIQUE FERDINAND, an individual, on behalf of themselves and all others similarly situated, Plaintiffs, v. GATE GOURMET, INC., a Delaware Corporation; and DOES 1 through 100, inclusive, Defendants* (the "Complaint"). The Complaint was assigned Los Angeles County Superior Court Case No. 20STCV41416.

2. The Complaint purports to allege causes of action for: (1) Wrongful Termination in Violation of Public Policy, (2) Violation of Business and Professions Code § 17200 *et al.* (the "Unfair Competition Law"), and (3) Breach of Fiduciary Duty. All causes of action are premised upon Plaintiffs' allegation that Gate Gourmet violated the CARES Act in subjecting Plaintiffs and similarly-situated employees to a layoff during the period of March 28, 2020 through the present.

1

67003428v.1

3.     On November 5, 2020, Plaintiff served the Complaint on Gate Gourmet and at that time also served a Summons, a  Civil Case Cover Sheet and a Notice of Case Assignment. True and correct copies of the Complaint, Summons, Civil Case Cover Sheet and Notice of Case Assignment are attached hereto as Exhibit A.  On November 10, 2020, the Court issued an "Order Regarding Newly Filed Class Action" setting an Initial Status Conference for January 22, 2021. A true and correct copy of the Court's Order obtained from the Los Angeles Superior Court's file is attached hereto as Exhibit B.  Exhibit B was not served on Gate Gourmet.  On December 3, 2020, Plaintiffs served a Notice of Continuance of Hearing and Order on counsel for Gate Gourmet.  Attached hereto as Exhibit C is a true and correct copy of the Notice of Continuance of Hearing and Order.

4.     The Complaint seeks to certify the following class: "all of Defendant's former employees working in the state of California who were involved in a layoff after March 27, 2020, when it would become clear that Congress intended to implement a bill which would provide money for the airline industry, including providing federal money to companies in need to continue to employ their employees." (Exhibit A, Complaint ¶ 25.)

5.     Gate Gourmet has not filed any pleadings or papers in this action prior to this Notice of Removal. Exhibits A and C constitutes all pleadings, processes, and orders properly served on Defendant in this action.

## II.    TIMELINESS OF REMOVAL

6.     Plaintiffs served their Summons and Complaint on Gate Gourmet on November 5, 2020. This Notice of Removal is timely because it is being filed within thirty (30) days of the service upon Defendant of a copy of the Summons and Complaint, and within one (1) year of the commencement of this action. See 28 U.S.C. § 1446(b); see also *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a notice of removal does not run until a party has been formally served with the summons and complaint under applicable state law).

DEFENDANT GATE GOURMET'S NOTICE OF REMOVAL

III.   **JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

7.     This Court has original subject-matter jurisdiction over this action under CAFA, codified in relevant part in 28 U.S.C. section 1332(d)(2). As set forth below, this action is properly removable pursuant to 28 U.S.C. section 1441(a) because the alleged amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a purported class action in which a class member is a citizen of a State different from that of Defendant (28 U.S.C. §§ 1332(d)(2) & (6)), and the number of putative class members is greater than 100.  See 28 U.S.C. § 1332(d)(5)(B).

A.     **There Is Minimal Diversity For Removal Under CAFA.**

8.     CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction.  That is, at least one purported class member must be a citizen of a state different from any named defendant. See 28 U.S.C. § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that to achieve its purposes CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement in 28 U.S.C. § 1332(d)(2)). Here, such minimal diversity exists among the parties as Plaintiffs are citizens of a state that is different from Defendant's state of citizenship.

a.     **Plaintiffs Are Citizens of California.**

9.     For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. See *Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place where he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747,

3

750 (9th Cir. 1986)); see also *Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes.")

10.     Here, Plaintiff Charles Scott ("Plaintiff Scott") alleges that "[a]t all times relevant …[he] was, and is, an individual residing in the City of Long Beach, County of Los Angeles, State of California."  (Exhibit A, Complaint ¶ 5.)  Plaintiff Brenda McCoy ("Plaintiff McCoy") alleges that "[a]t all times relevant …[she] was, and is, an individual residing in the City of Los Angeles, County of Los Angeles, State of California."  (Exhibit A, Complaint ¶ 6.)  Plaintiff Dominique Ferdinand ("Plaintiff Ferdinand") alleges that "[a]t all time relevant … [he] was, and is, an individual residing in the City of Los Angeles, County of Los Angeles, State of California." (Exhibit A, Complaint ¶ 7.)

11.     At all times during their employment, Plaintiffs represented to Gate Gourmet that their home addresses were in California.  (See Declaration of William McGowan ("McGowan Dec.") ¶¶ 6-8.)  Throughout their entire employment with Gate Gourmet, Plaintiffs maintained a California address on file for purposes of their personnel file, payroll checks, state payroll, and tax withholdings. (*Id*. at ¶ 9.) Plaintiffs' last known home addresses with Gate Gourmet are in California. (*Id*.) Plaintiffs filed this lawsuit in California.

12.     Accordingly, Plaintiffs are, and have been at all times since the institution of this action, citizens of the State of California for the purposes of diversity.

        **b.     <u>Defendant Is Not A Citizen of California.</u>**

13.     Gate Gourmet is a citizen of Delaware and Virginia and is not now, and was not at the time of the filing of this action, a citizen of the state of California within the meaning of 28 U.S.C. section 1332(c)(1). Pursuant to 28 U.S.C. section 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The

appropriate test to determine a corporation's principal place of business is the "nerve center" test. *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.*

14.     Gate Gourmet is incorporated under the laws of the State of Delaware, with its principal place of business in Reston, Virginia. (McGowan Dec., ¶ 4.) Gate Gourmet's principal place of business is in Reston, Virginia because its "nerve center" is located in Reston Virginia. Specifically, the Reston corporate office is where Gate Gourmet's senior management and high level officers manage its executive and administrative operations, including operations relating to administering company-wide policies and procedures, legal affairs, and general business operations. (*Id.* at ¶ 5.)

15.     At all relevant times, Gate Gourmet was a citizen of the State of Delaware and Virginia. It is not now, and was not at the time of the filing of the Complaint, a citizen of the State of California.

### c.   Doe Defendants' Citizenship Must Be Disregarded.

16.     The residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. See *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); see also *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (doe defendants need not join in removal); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal). Thus, Doe defendants 1 through 100 do not deprive this Court of jurisdiction.

17.     Accordingly, because Plaintiffs are citizens of California and Defendant is not a citizen of California, diversity of citizenship exists between Plaintiffs and Defendant for purposes of CAFA removal.

5

67003428v.1

        **d.**    **Defendant Is Not A Governmental Entity.**

18.    Gate Gourmet is not a state, a state official, or some other governmental entity.

    **B.**    **The Number of Putative Class Members Exceeds 100.**

19.    CAFA requires that the aggregated number of members of all classes proposed in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

20.    Plaintiffs seek relief on behalf of a putative class comprised of: "all of Defendant's former employees working in the state of California who were involved in a layoff after March 27, 2020, when it would become clear that Congress intended to implement a bill which would provide money for the airline industry, including providing federal money to companies in need to continue to employ their employees." (Exhibit A, Complaint ¶ 25.)

21.    Plaintiffs allege in the Complaint that "the class is estimated to be greater than one (100) individuals …". (Complaint ¶ 26.)  Further, on May 20, 2020, Gate Gourmet laid off more than 600 full-time non-exempt employees in California. (McGowan Dec., ¶ 10.)

22.    Accordingly, the aggregated number of members of the putative class proposed by Plaintiffs far outnumbers the 100 member requirement.

    **C.**    **The Amount in Controversy Exceeds $5,000,000.00.**

23.    While Gate Gourmet specifically denies liability as to Plaintiffs' claims and the ability for this action to proceed on a class basis, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs. All calculations supporting the amount in controversy are based on the Complaint's allegations (along with other documents as identified herein), assuming, without any admission, the truth of the allegations and assuming liability (which Gate Gourmet disputes) is established. Likewise, these calculations are based on the putative class alleged in the Complaint, and in no way indicate that class treatment is appropriate in this case, or that Plaintiffs have standing to represent any such class, or that the class

DEFENDANT GATE GOURMET'S NOTICE OF REMOVAL

67003428v.1

1   proposed would meet the requirements set forth in Rule 23 of the Federal Rules of

2   Civil Procedure. Gate Gourmet  expressly reserves the right to challenge Plaintiffs'

3   claims, adequacy and standing to represent any class, class definitions, and calculation

4   of damages in all respects. However, for purposes of removal, Gate Gourmet bases its

5   calculations on the allegations, facts known to Gate Gourmet, and class definition

6   pleaded by Plaintiffs.

7        24.    In calculating the amount in controversy under CAFA, the claims of the

8   individual members of a class are aggregated to determine if the amount in controversy

9   exceeds the sum or value of $5,000,000.00. 28 U.S.C. § 1332(d)(6). Congress intended

10  federal jurisdiction to be appropriate under CAFA "if the value of the matter in

11  litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the

12  viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages,

13  injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep, S. Rep. No. 109-14, at

14  42 (2005). Moreover, the Senate Judiciary Committee's Report on the final version of

15  CAFA makes clear that any doubts regarding the maintenance of interstate class

16  actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at

17  42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a

18  purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,'

19  the court should err in favor of exercising jurisdiction over the case … . Overall, §

20  1332(d) was intended to expand substantially federal court jurisdiction over class

21  actions. Its provisions should be read broadly, with a strong preference that interstate

22  class actions should be heard in a federal court if properly removed by any

23  defendant.").

24       25.    To establish that the amount in controversy exceeds the jurisdictional

25  amount, the defendant need only make a plausible claim that the amount in

26  controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v. Owens*,

27  574 U.S. 81 (2014).

28

26.     Here, Plaintiffs seek to assert three class claims including claims for Wrongful Termination in Violation of Public Policy, violation of California's Unfair Competition Law and Breach of Fiduciary Duty.  Plaintiffs seek to recover general damages, restitution, special damages, back pay, punitive damages, attorneys' fees and costs, injunctive relief and disgorgement on behalf of themselves and the putative class. Based on a review of Gate Gourmet's termination records and payroll records for layoffs occurring after March 27, 2020, the amount in controversy on Plaintiffs' putative class claims exceeds the $5,000,000.00 jurisdictional amount.

### a.     **Plaintiffs' Claims for Recovery of Back Pay Easily Exceeds $5,000,000.**

27.     Plaintiffs seek to recover damages including "lost wages for Plaintiffs and the class members and benefits and other monetary relief" for the period of time after their layoff, through the present. (See Exhibit A, Complaint Prayer for Damages as to First Cause of Action ¶ 1 and Third Cause of Action ¶1 and Complaint ¶¶ 32, 52.)

28.     Gate Gourmet's records reflect that it laid off more than 600 full time (40 hours per week) non-exempt California employees in a reduction in force that occurred on May 20, 2020, that have not been rehired.  (McGowan Dec., ¶ 10.)  Gate Gourmet's records further reflect that these employees earned at least $13.00 per hour as of the date of their termination, although most were paid significantly higher hourly rates of pay.  (*Id*.)  Had these employees continued to work full-time for Gate Gourmet during the period of May 21, 2020, through September 30, 2020, they would have earned in excess of  $5,616,000.00  (600 [employees] x $13 [per hour] x 40 [hours per week] x 18 [weeks] = $5,616,000.00).[1]

29.     Accordingly, the threshold $5,000,000 for CAFA removal is easily met based solely on the amount in controversy as to Plaintiffs' claims seeking to recover

---

[1] Plaintiffs allege that "as part of the application to receive federal funds under the CARES Act, GATE GOURMET was required to make several assurances including that, … Defendant would …*refrain from conducting involuntary layoffs or furloughs until September 30, 2020*."  (Exhibit A, Complaint ¶ 20, emphasis added.)

wages (back pay) in their First Cause of Action for Wrongful Termination in Violation of Public Policy and their Third Cause of Action for Breach of Fiduciary Duty.

**b.** **Plaintiffs' Prayer for Emotional Distress, Punitive Damages, Attorney's Fees and Injunctive Relief Also Establish the Amount in Controversy Exceeds $5,000,000.**

30.     In addition to back pay, Plaintiffs further seek to recover emotional distress damages on behalf of themselves and the putative class, as well as punitive damages and attorneys' fees and costs.  Such damages in the aggregate and attorneys' fees are properly included in calculating the amount in controversy and further demonstrate that the amount in controversy has been met.  See *Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law);  *Conrad Assocs. v. Hartford Accident & Indem. Co*., 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages, including attorneys' fees and punitive damages); *Richmond  v. Allstate  Ins. Co*., 897 F. Supp. 447, 449-50 (S.D. Cal. 1995) (amount in controversy includes potential recovery of punitive damages award).

31.     Finally, in their Second Cause of Action for violation of the Unfair Competition Law, Plaintiffs seek "a temporary, preliminary, and/or permanent order from this Court prohibiting Defendant from continuing to engage in the unlawful, unfair, and/or fraudulent business acts or practices set forth in this Complaint, in addition to disgorgement and restitution by Defendant to all persons with a vested interest therein who have been adversely affected by the practices at issue." (Exhibit A, Complaint ¶ 42.)  Costs incurred in compliance with an injunction are properly considered in the amount in controversy. See *Adams v. American Family Mutual Insurance Company*, 2013 WL 12058059 (S.D. Iowa Nov. 8, 2013.) To the extent Plaintiffs seek an order requiring Gate Gourmet to rescind the terminations of its employees that were included in Gate Gourmet's reduction in force and further seek to

9

67003428v.1

1    recover back pay as "restitution" the cost to Gate Gourmet of complying with such an

2    order would include paying back pay through September 30, 2020.  (Exhibit A,

3    Complaint ¶ 20.)[2]

4         32.    As set forth above, the minimum jurisdictional amount in controversy is

5    easily met by Plaintiff's claims. Consideration of emotional distress damages, punitive

6    damages, injunctive relief, disgorgement, restitution and attorneys' fees thus would

7    only extend the degree to which the amount in controversy minimum is exceeded.

8         33.    Because diversity of citizenship exists, the putative class contains more

9    than 100 members, and the amount in controversy exceeds $5,000,000, this Court has

10   original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2). This action is

11   proper for removal to this Court pursuant to 28 U.S.C. § 1441(a).

12   **IV.   FEDERAL QUESTION JURISDICTION**

13        34.    Any civil action commenced in state court is removable if it might have

14   been originally brought in federal court.  See 28 U.S.C. § 1441; *Exxon Mobil Corp. v.*

15   *Allapattach Servs., Inc.*, 545 U.S. 546, 563-64 (2005) ("district court has original

16   jurisdiction of a civil action for purposes of section 1441(a) as long as it has original

17   jurisdiction over a subset of claims constituting the action").  This Court has original

18   jurisdiction of this action under 28 U.S.C. § 1331, and Gate Gourmet may remove the

19   lawsuit pursuant to the provisions of 28 U.S.C. § 1441, since Plaintiffs' claims arise

20   under the CARES Act.  Specifically, as a basis for their individual and class claims,

21   Plaintiffs allege:

22        "GATE GOURMET is a provider of airline catering and provisioning

23        services for airlines and so qualified as an "airline catering services"

24        under the CARES Act, Title IV, Subtitle B, section 4111. GATE

25        GOURMET in fact was awarded payroll support … under the CARES

26        program."

27   _____

28   [2] See also Section C.(a.) *supra*., re amount in controversy as to Plaintiffs' claim for
     back pay.

67003428v.1

\* \* \*

"…[A]s part of the application to receive federal funds under the CARES Act, GATE GOURMET was required to make several assurances including that, pursuant to sections 4113(b)(1)(A) and 4114 of the CARES Act, Defendant would use such payments exclusively for the continuation of employee wages, salaries, and benefits; and refrain from conducting involuntary layoffs or furloughs until September 30, 2020."

\* \* \*

"[O]n March 28, 2020 and continuing on through the present, GATE GOURMET began to layoff and/or furlough hundreds of employees including Plaintiffs after the CARES Act had been signed into law. GATE GOURMET was aware and put on notice that federal fund would be made available to them with the purpose of protecting workers and helping to retain employees. GATE GOURMET's actions are in direct contravention to the purpose behind the financial bail-out GATE GOURMET applied for and received under the CARES Act."

(Exhibit A, Complaint ¶¶ 19-21.)

35.     Plaintiffs' First Cause of Action for purported Wrongful Termination in Violation of Public Policy is expressly premised on Plaintiffs' allegation that Gate Gourmet violated the CARES Act:

"Plaintiffs and Class Members claim that they were discharged from employment on March 28, 2020 after the passage of the CARES ACT and have not been rehired by GATE GOURMET even after GATE GOURMET received federal funding for the purpose of retaining employees. This lay off is in violation of public policy in the GATE GOURMET has accepted federal money and defied the purpose of the money by proceeding with a layoff of hundreds of employees."

11

67003428v.1

(Exhibit A, Complaint ¶ 31.)

36.    In their Second Cause of Action for Violation of the Unfair Competition Law, Plaintiffs allege:  "Defendant's acts and practices, as detailed above, constitute acts of unfair competition. Defendant has engaged in an unlawful, unfair, and/or fraudulent business act and/or practices within the meaning of California Business and Professions Code sections 17200, et seq."  (Exhibit A, Complaint ¶ 38.)  As a remedy, Plaintiffs seek "preliminary, and/or permanent order from this Court prohibiting Defendant from continuing to engage in the unlawful, unfair, and/or fraudulent business acts or practices set forth in this Complaint, in addition to disgorgement and restitution by Defendant to all persons with a vested interest therein who have been adversely affected by the practices at issue."

37.    In their Third Cause of Action for Breach of Fiduciary Duty, Plaintiffs allege:

> "The CARES Act establishes a fiduciary duty in Defendants to protect the interest of GATE GOURMET employees due to the federal money Defendants for the sole purpose of the continuation of payment of employee wages, salaries, and benefits.
>
> *    *    *
>
> Defendants have violated and breached that fiduciary duty including a breach of duties of due care, loyalty, and good faith by proceeding with a mass lay off of the Class Members"

(Exhibit A, Complaint ¶¶ 44, 46.)

38.    An action "arises under" federal law within the meaning of § 1331 if:  (1) federal law creates the cause of action and/or grants federal jurisdiction to hear the case; or (2) plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. When a state law claim necessarily raises a disputed federal issue that is central to the case, the claim arises under federal law. See *Grable & Sons*

*Metal Products, Inc. v. Darue Engineering & Mfg*., 545 US 308, 314 (2005); see also *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 US 677, 699 (2006).

39.     The federal court may look beyond a plaintiff's pleadings to determine the propriety of removal.  In *Rivet v. Regions Bank of Louisiana*, the Supreme Court held:

> "... an 'independent corollary' to the well-pleaded complaint rule is the further principle that 'a plaintiff may not defeat removal by omitting to plead necessary federal questions.'  If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of plaintiff's complaint."

522 U.S. 470, 475 (1998).  (citations omitted.)

40.     Here, the Complaint raises a disputed federal issue as to whether Gate Gourmet violated the CARES Act by allegedly laying off and furloughing its employees with "aware[ness] … that federal funds would be made available to them with the purpose of protecting workers and helping to retain employees."  (Exhibit A, Complaint   ¶ 21.) The trier of fact must therefore interpret the CARES Act to determine if these alleged layoffs and furloughs violated public policy (1st Cause of Action), constitute an "unlawful, unfair and/or fraudulent business act or practice" (2nd Cause of Action) or breached a fiduciary duty allegedly owed by Gate Gourmet to its employees as a result of its receipt of funds under the CARES Act (3rd Cause of Action).

41.     Consequently, this action is removable based on federal question jurisdiction.  *See Vaden v. Discover Bank*, 556 U.S. 49, 59-60 (2009) (a suit arises under federal law when "the plaintiff's statement of his own cause of action shows that it is based upon [federal law]"); *Abada v. Charles Schwab & Co.*, 300 F.3d 1112, 1118 (9th Cir. 2002) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's well-pleaded complaint.") (quoting *Caterpillar*, 482 U.S. at 392-93).

13

67003428v.1

42.     To the extent any claims in the action arise under state law supplemental jurisdiction over such claims exists pursuant to 28 U.S.C. § 1367.

**V.     VENUE**

43.     Venue lies in the United States District Court, Central District of California pursuant to 28 U.S.C. §§ 84(c)(2), 1441 and 1446(a). This action was filed originally in the Superior Court of the State of California, County of Los Angeles. The County of Los Angeles is within the jurisdiction of the United States District Court, Central District of California.

**VI.     NOTICE OF REMOVAL**

44.     A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Stanislaus, pursuant to 28 U.S.C. §1446(d).

**VII.     PRAYER FOR REMOVAL**

45.     WHEREFORE, Gate Gourmet prays that this civil action be removed from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

DATED:  December 4, 2020                    SEYFARTH SHAW LLP


                                        By: */s/ Jill A. Porcaro*
                                            Diana Tabacopoulos
                                            Jill A. Porcaro
                                            Attorneys for Defendant
                                            GATE GOURMET, INC.

14

67003428v.1