| | |
|---|---|
| 1 | **GREGORY P. WONG (SBN: 204502)** |
| | **HEATHER K. COX (SBN: 278898)** |
| 2 | **BARKHORDARIAN LAW FIRM, PLC** |
| | 6047 Bristol Parkway, Second Floor |
| 3 | Culver City, CA 90230 |
| | Telephone: (323) 450-2777 |
| 4 | Email: Heather@barklawfirm.com |

**Attorneys for Plaintiff**
**Charles Scott, Brenda McCoy, Dominique Ferdinand, and on behalf of themselves and all others similarly situated**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES SCOTT, an individual; BRENDA MCCOY, an individual; DOMINIQUE FERDINAND, an individual, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> GATE GOURMET, INC., a Delaware Corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO.: 2:20-cv-11033 <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF** <br><br> [Los Angeles Superior Court Case No. 20STCV41416] <br><br> Hearing Date: February 22, 2021 <br> Time: 10:00 a.m. <br> Dept: 8D <br> Judge: Hon. Christina A. Snyder <br><br> Complaint Filed: October 27, 2020 <br> Removal Date: December 4, 2020 |

0
PLAINTIFFS' SUPPLEMENTAL BRIEF

## I. INTRODUCTION

Plaintiff Charles Scott, Plaintiff Brenda McCoy, Plaintiff Dominique Ferdinand, on behalf of themselves and all others similarly situated ("Plaintiffs") Motion to Remand should be granted as Defendant Gate Gourmet Inc. ("Defendant") has not and cannot support by a preponderance of the evidence that the total amount in controversy exceeds the threshold $5 million dollars as is required for diversity jurisdiction under the Class Action Fairness Act ("CAFA").

This supplemental brief is being provided in response to the Court's January 14, 2021 Order Re: Supplemental Briefing Regarding Jurisdiction Pursuant to 28 U.S.C. 1332, which directed Plaintiffs to address the following issue: "Plaintiffs are requested to explain why they contend that the total amount in controversy is less than $5 million."

For the reasons set forth below, Plaintiffs contend that the maximum amount at issue in this matter is no more than **$2,566,429.60**, based on the relevant legal authority and the class statistics asserted by Defendant in both its removal of this action from state court and its opposition to Plaintiffs' remand motion,

## II. BASED ON THE INFORMATION PROVIDED BY DEFENDANT, THE AMOUNT IN CONTROVERSY DOES NOT EXCEED $5,000,000

The Ninth Circuit has established the following framework for determining the amount in controversy on removal. First, "[t]he district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Singer v. State Farm Mut. Automobile Ins. Co.,* 116 F.3d 373, 377 (9th Cir.1997). The amount in controversy is not facially apparent from the Complaint, beyond Plaintiff stating that it has not been met. *See*

Complaint ¶ 1.  Thus, further information may be considered by the Court to determine the amount in controversy.

When a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions.  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197-99 (9th Cir. 2015).  Defendant does not state what assumptions, if any, went into its single calculation which was only for back pay to support the amount in controversy.  The information provided to support that the amount in controversy is met includes merely that there are 1,500 full-time employees laid off on May 20, 2020 with an average hourly rate of $17.91 who would have earned a combined total of $19,876,429.60 had they continued to be employed through September 30, 2020 (a period of 19 weeks).  *See* Defendant's Opposition to Motion For An Order Remanding Action to State Court , page 9, lines 4-12.  Therefore, Plaintiffs will use this minimal information as the basis for their analysis regarding the amount in controversy.

The Ninth Circuit has determined that when it comes to back pay "even in the context of the more demanding "legal certainty" test … this Court should engage in an inquiry into the facts with respect to mitigation of damages under the preponderance of the evidence test… This is especially appropriate since, in assessing a motion to remand in a removal case, the Court is directed to examine summary-judgment type evidence."  *Lamke v. Sunstate Equipment Co. LLC*, 319 F. Supp. 2d 1029, 1033 (N.D. Cal. 2004) (citing *Riggins v. Riggins*, 415 F.2d 1259 (9th Cir.1969) and finding that the court "should engage in an inquiry into the facts with respect to mitigation of damages" in evaluating the amount in controversy in the context of removal); See also *Melendez v. HMS Host Family Restaurants, Inc.*, 2011 WL 3760058 *2 (C.D. Cal. 2011) (remanding case where amount in controversy was not met after reducing potential lost wages by the amount of disability benefits plaintiff received).  Therefore, it is reasonable for calculating the

amount in controversy to incorporate assumptions regarding Plaintiffs' mitigation of damages, including the receipt of unemployment benefits.

Here, assuming a laid-off worker earned at least California minimum wage of $13.00 an hour working full-time, they would be entitled to approximately $260.00 per week in unemployment benefits according to the Unemployment Insurance Benefit Table which is based on the highest quarterly earnings of approximately $6,760.00 ($13.00 an hour multiplied by 2080 hours per year divided by 4 quarters in a year). This is a conservative estimate for the basis of an employee's mitigation of damages as Defendant asserts a class-wide average rate of pay ($17.91 per hour) that exceeds the minimum wage.

While other mitigation efforts in general may be difficult to ascertain in a class action, this is not the case here within the context of the Coronavirus 2019 pandemic. The calculation becomes more manageable due to the additional $600.00 each week in unemployment benefits allowed for by the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"). Further, it is reasonable to assume that each laid-off employee received this $600.00 each week until it expired on August 1, 2020.

It is not unreasonable to consider this additional government assistance during this unique time where there was, and still is, significant unemployment and the Federal government has provided multiple levels of assistance to the unemployed. In fact, additional unemployment benefits assistance of $300.00 a week was implemented beginning December 26, 2020 by the Continued Assistance for Unemployed Workers Act of 2020 and further assistance continues to be discussed by Congress.

As summarized in the table below, taking the unemployment benefits into account as minimum mitigation efforts which would include the weekly benefit of $600.00 from May 20, 2020 to August 1, 2020 (11 weeks) and the minimum weekly unemployment benefit of $260.00 for the entire time period asserted by

3
PLAINTIFFS' SUPPLEMENTAL BRIEF

Defendant, the total value of the class members' mitigation during this period is $17,310,000.00.

| Time Period | # of Employees | Weeks In Period | Total Workweeks | COVID Relief Benefit | UI Benefit | Total Weekly Benefit | Total Mitigation |
|---|---|---|---|---|---|---|---|
| 5/20/20 - 8/1/20 | 1,500 | 11 | **16,500** | $600.00 | $260.00 | **$860.00** | **$14,190,000.00** |
| 8/2/20 - 9/30/20 | 1,500 | 8 | **12,000** | $0.00 | $260.00 | **$260.00** | **$3,120,000.00** |
| | | | | | | Total | **$17,310,000.00** |

Taking this into account with Defendant's assertion results in a maximum amount at issue of **$2,566,429.60** ($19,876,429.60 - $17,310,000.00 = $2,566,429.60).

Beyond the consideration of mitigation, there are other reasonable assumptions which would further reduce the amount calculated by Defendant, including considering the percentage of employees that would not be paid due to various leaves of absences. Another reasonable assumption would be the anticipated retirements or other employment reduction actions such as planned terminations. Defendant has failed to provide any information regarding these reasonable assumptions which would impact its amount in controversy calculation. Therefore, the amount in controversy is even less than the amount calculated by Plaintiffs above which is already well below the CAFA threshold of $5,000,000.

As for the other categories of damages asserted in Plaintiffs' Complaint, such as punitive damages and emotional distress, Plaintiffs contend that no other damages should be considered here as Defendant has failed to: (1) assign any value to these specific categories; (2) provide any summary-judgment-type evidence as is required to support its removal; or (3) cite to any standard or case to support any amount assigned to these other damages. *See Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004) (a removing defendant "must present evidence that punitive damages will more likely than not exceed the amount needed to increase the amount in controversy …") (citing *McCaa v. Mass. Mut. Life Ins. Co.*, 330 F. Supp. 2d 1143, 1149 (D. Nev. 2004)); *Fisher v. HNTB Corp.*, 2018 WL

6323077, at *6 (C.D. Cal. Dec. 3, 2018) (To establish punitive damages as part of the amount in controversy calculation, "a party asserting federal diversity jurisdiction may ... introduce evidence of jury verdicts in cases involving analogous facts."); *Daley v. Walmart Stores, Inc.*, 2018 WL 3104630, at *5 (C.D. Cal. June 21, 2018) (establishing probable emotional distress damages is done by introducing evidence of jury verdicts from cases with analogous facts); *Aguilar v. Wells Fargo Bank, N.A.*, 2015 WL 6755199, at *5 (C.D. Cal. Nov. 4, 2015) ("While settlements and jury verdicts in similar cases can provide evidence of the amount in controversy, the cases must be factually identical or, at a minimum, analogous to the case at issue.")

Finally, in response to Defendant's contention that attorneys' fees and costs contribute to reaching the CAFA threshold, Defendant has failed to come forward with facts to support the inclusion of such items into the amount in controversy. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir. 2018) (rejecting a per se rule of 25% of recovery and holding "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence"). Nonetheless, even if Plaintiffs include the commonly assumed 25% of the alleged recovery for attorney's fees in their calculation, this would only be an additional $641,607.40 which is not enough to confer jurisdiction under the CAFA.

### III.   CONCLUSION

Based on the above, Plaintiffs submit that this case should be remanded back to the Los Angeles County Superior Court.

DATED: February 5, 2021

Respectfully Submitted
BARKHORDARIAN LAW FIRM, PLC

/s/ Heather K. Cox
Gregory P. Wong
Heather K. Cox
Attorneys for Plaintiffs