UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Heather Cox  Jill Porcaro

**Proceedings:** DEFENDANT'S MOTION TO STRIKE PURSUANT TO FRCP 12(f) (Dkt. 12, filed December 28, 2020)

DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(6) (Dkt. 13, filed December 28, 2020)

PLAINTIFFS' MOTION TO REMAND CASE TO LOS ANGELES SUPERIOR COURT (Dkt. 14, filed December 28, 2020)

## I.   INTRODUCTION & BACKGROUND

On October 27, 2020, plaintiffs Charles Scott, Brenda McCoy, and Dominque Ferdinand filed this class action against defendant Gate Gourmet, Inc. and Does 1-100 in Los Angeles Superior Court, alleging claims for (1) wrongful termination in violation of public policy; (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"); and (3) breach of fiduciary duty. Dkt. 1-1 ("Compl."). The gravamen of plaintiffs' complaint is that they and members of the class were laid off by defendant on or after March 28, 2020, in violation of the terms and conditions of the payroll support that defendant was awarded by the federal government pursuant to the CARES Act, 15 U.S.C. § 9001, *et seq*. Defendant removed this action to this Court on December 4, 2020. Dkt. 1 ("NTC of Removal").

On December 28, 2020, plaintiff filed a motion to remand. Dkt. 14 ("Remand MTN"). Defendant opposed the motion to remand on January 4, 2021. Dkt. 20 ("Remand Opp'n."). Plaintiff filed a reply in support of the motion to remand on January 11, 2021. Dkt. 23 ("Remand Reply"). On January 14, 2021, the Court requested supplemental briefing. Dkt. 25. The parties each submitted supplemental briefs on February 5, 2021. Dkts. 26 ("Plts. Remand Supp."), 27 ("Def. Remand Supp.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

On December 28, 2020, defendant filed a motion to dismiss the complaint pursuant to FRCP 12(b)(6), dkt. 13 ("MTD"), and a motion to strike pursuant to FRCP 12(f). Dkt. 12 ("MTS"). Plaintiffs opposed the motion to dismiss and motion to strike on January 4, 2021. Dkts. 18 ("MTS Opp'n"), 19 ("MTD Opp'n"). Defendant filed replies in support of the motion to dismiss and motion to strike on January 11, 2021. Dkts. 21 ("MTS Reply"), 22 ("MTD Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiffs allege the following facts.

### a. The Parties

Plaintiff Charles Scott ("Scott") is a resident of Long Beach, California. Compl. ¶ 5. Scott began working for defendant as a chef in approximately 2017. Id. ¶ 13. Plaintiff Brenda McCoy ("McCoy") is a resident of Los Angeles, California. Id. ¶ 6. McCoy began working in food assembly for defendant in or about "early 2019." Id. ¶ 14. Plaintiff Dominique Ferdinand ("Ferdinand") is a resident of Los Angeles, California. Id. ¶ 7. Ferdinand began working for defendant as an equipment handler on or about February 11, 2019. Id. ¶ 15.

Defendant Gate Gourmet is a Delaware Corporation with its principal place of business in Reston, Virginia. NTC of Removal at 5. Defendant is a provider of airline catering and provisioning services for airlines, with operations in Los Angeles County. Compl. ¶¶ 8, 19.

### b. Federal Payroll Support for Aviation Industry

Plaintiffs allege that the Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. § 9001, *et seq.* (the "CARES ACT") was signed into law in March 2020, with the "stated purpose and public policy" of addressing "the profound economic disruption arising from the unprecedented COVID-19 global pandemic." Id. ¶¶ 16, 17. Plaintiffs allege that Congress's intent in passing the CARES Act was to "reduce the amount of unemployment that would otherwise flow from the impact of COVID-19 on the economy, and to protect vulnerable workers." Id. ¶ 17. The CARES Act allegedly provided "significant" federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

funding to support several industries impacted by COVID-19, including the airline industry. Id. ¶ 16.

Specifically, plaintiffs allege that Section 4112 of the CARES Act has been described by the United States Department of Treasury website as intended to provide "payroll support to passenger air carriers, cargo air carriers, and certain contractors for the continuation of employee wages, salaries and benefits," as part of a "$2 trillion relief package" aimed at "protecting the American people from the public health and economic impacts of COVID-19." Id. ¶ 18.

Plaintiffs allege that defendant was eligible to receive federal funds pursuant to Section 4111 of the Cares Act because it is a provider of "airline catering services". Id. ¶ 19; see also 15 U.S.C. § 9071. Plaintiffs further alleged that in order to establish eligibility to receive funding through the CARES ACT, defendant was required to make assurances pursuant to Sections 4113(b)(1)(A) and 4114 of the Act that defendant "would use such payments exclusively for the continuation of employee wages, salaries and benefits; and refrain from conducting involuntary layoffs or furloughs until September 30, 2020. Compl. ¶ 20; see also 15 U.S.C. §§ 9073, 9074. Defendant allegedly received federal funding pursuant to the CARES Act in the amount of $171,424,598. Compl. ¶ 19.

### c. Layoffs

Plaintiffs allege that on March 28, 2020—after the CARES Act was signed into law—defendant began laying off or furloughing hundreds of employees, including plaintiffs. Id. ¶ 21. Plaintiffs allege that at the time of those employment actions, defendant was aware that federal funds would be made available to defendant "with the purpose of protecting workers and helping to retain employees." Id. Plaintiffs further allege that the layoffs and furloughs are "in direct contravention to the purpose behind the financial bail-out [defendant] applied for and received under the CARES Act." Id.

### III. LEGAL STANDARDS

#### a. Motion to Remand

Removal is proper where the federal courts would have had original jurisdiction over an action filed in state court. See 28 U.S.C. § 1441(a). In general, a federal district court has subject matter jurisdiction where a case presents a claim arising under federal law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

("federal question jurisdiction"), or where the plaintiffs and defendants are residents of different states and the amount in controversy exceeds $75,000 ("diversity jurisdiction"). See Deutsche Bank Nat'l Trust Co. v. Galindo, No. CV 10-01893, 2011 WL 662324, *1 (C.D. Cal. Feb. 11, 2011) (explaining the two types of jurisdiction). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Id. (citation omitted). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (quotation omitted).

CAFA gives federal courts jurisdiction over certain class actions if (1) "the class has more than 100 members"; (2) "the parties are minimally diverse"; and (3) "the amount in controversy exceeds $5 million." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84-85, 135 S.Ct. 547, 552 (2014). There is no presumption against removal jurisdiction in CAFA cases; however, the defendant still bears the burden of establishing removal jurisdiction. Id. at 554. CAFA's "minimal diversity" requirement means that "a federal court may exercise jurisdiction over a class action if 'any member of a class of plaintiffs is a citizen of a State different from any defendant.' " Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 165, 134 S.Ct. 736, 740, (2014) (quoting 28 U.S.C. § 1332(d)(2)(A)). Where, as here, the amount in controversy is contested, and the plaintiff does not plead a specific amount in controversy, the defendant's evidentiary burden in opposing a motion to remand depends on whether plaintiff has mounted a facial or factual attack on defendants jurisdictional allegations. Salter v. Quality Carriers, Inc., 974 F.3d 959, 964 (9th Cir. 2020). A facial attack "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction," thus calling for the Court to "determine[] whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Id. (quoting Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014)). In contrast, a factual attack "contests the truth of plaintiff's factual allegations, usually by introducing evidence outside the pleadings." Id. "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Harris v. KM Indus., Inc., 980 F.3d 694, 699 (9th Cir. 2020). Although a plaintiff may present evidence in support of a factual attack, they "need only challenge the truth of defendant's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by the evidence." Id. at 700.

Under the preponderance of the evidence standard, the removing party must "provide evidence establishing that it is more likely than not that the amount in controversy exceeds [the jurisdictional amount]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotation omitted). In determining whether the removing party has satisfied this burden, the district court may consider facts in the removal petition and "'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" Singer v. State Farm Mut. Auto. Ins. Co.,116 F.3d 373, 377 (9th Cir.1997) (quoting Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335–36 (5th Cir.1995)).

### b. Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                           'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### c. Motion to Strike Pursuant to Rule 12(f)

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." Wyshak v. City National Bank, 607 F.2d 824, 827 (9th Cir. 1979). To meet this lenient "fair notice" standard, a defendant need only state "the nature and grounds for the affirmative defense." See, e.g., Vogel v. Linden Optometry APC, No. 2:13-cv-00295-GAF-SH, 2013 WL 1831686, at *3 (C.D. Cal. Apr. 30, 2013); Kohler v. Islands Restaurants, LP, 280 F.R.D. 560, 564 (S.D. Cal. 2012). A matter is "immaterial" within the meaning of Rule 12(f) if it "has no essential or important relationship to the claim for relief or the defenses being plead," and "impertinent" matters are "statements that do not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

pertain, and are not necessary, to the issues in question." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010) (internal citations omitted). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). "However, motions to strike are typically viewed with disfavor because they are often used for purposes of delay, and because of the strong judicial policy favoring resolution on the merits." Harbor Breeze Com. v. Newport Landing Sportfishing, Inc., No. 8:17-cv-01613-CJC-DFM, 2018 WL 4944224, at *1 (C.D. Cal. Mar. 9, 2018). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." California Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).

### IV. DISCUSSION
  a. Motion to Remand
    i. Diversity Jurisdiction Pursuant to CAFA

Defendant asserts that this Court has jurisdiction over this action pursuant to CAFA. As stated above, CAFA gives federal courts jurisdiction over certain class actions if (1) "the class has more than 100 members"; (2) "the parties are minimally diverse"; and (3) "the amount in controversy exceeds $5 million." Dart Cherokee, 135 S.Ct. at 552. Here, plaintiffs appear to concede that the parties are minimally diverse and that the proposed class contains more than 100 members. See generally Remand MTN. Accordingly, the Court addresses only whether defendant has adequately established that "the amount in controversy exceeds $5 million."

Plaintiffs argue that defendant has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $5 million. "In measuring the amount in controversy, a court must 'assum[e] that the allegations of the complaint are true and assum[e that] a jury [will] return[ ] a verdict for the plaintiff on all claims made in the complaint.' " Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quoting Jackson v. American Bankers Ins. Co. of Florida, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997)); see also Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1148 (C.D. Cal. Jul. 19, 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe"). "[W]hen the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

court then decides where the preponderance lies." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1198 (9th Cir. 2015). Under this system, the removing party bears the burden of demonstrating that the CAFA amount in controversy requirement is met, but may "rely on *reasonable assumptions* to prove that it has met the statutory threshold." Harris, 980 F.3d at 701 (citing Ibarra, 775 F.3d at 1197; Arias v. Residence Inn by Marriott, 936 F.3d 920, 922 (9th Cir. 2019)).

Defendant asserted in its notice of removal that the amount placed in controversy by plaintiffs' claims for back pay for the period from May 21, 2020 through September 30, 2020 was "in excess of $5,616,000.00" calculated as follows: "(600 [employees] x $13 [per hour] x 40 [hours per week] x 18 [weeks] = $5,616,000.00)." NTC of Removal at 8. In support of removal, defendant submitted a declaration from its Regional Human Resources Director, William McGowan, stating that defendant's employment records reflected that on May 20, 2020, defendant laid off "more than 600 full-time" employees, each of whom was earning at least $13.00 at the time of the layoffs. Dkt. 3 (McGowan Decl.") ¶ 10. In opposition to plaintiffs' motion to remand, defendant explained that its initial estimate of the amount in controversy was "conservatively calculated" and submitted a second declaration from McGowan, attaching data generated from its employee records database for the employees laid off on May 20, 2020. Remand Opp'n at 6; Dkt. 20-1 ("Supp. McGowan Decl.") ¶ 5. Relying on that data, McGowan attests that on May 20, 2020, Gate Gourmet laid off 1,500 full-time hourly employees, earning an average of $17.92 per hour, such that "[a]ssuming these employees continued to be employed by Gate Gourmet on a full-time basis through September 30, 2020 (19 weeks, and their pay rates did not change, they would have earned $19,876,429.60." Supp. McGowan Decl. ¶ 6. Defendant's supplemental brief explains, in response to a question from the Court regarding the disparity between its two calculations of the amount in controversy, that the $19,876,429.60 reflected in McGowan's second declaration represents the "maximum amount that Plaintiffs could potentially recover in wage losses" based on the actual number of employees laid off and their pay rates. Def. Remand Supp. at 4 -5.

In opposing removal, plaintiffs argue that defendant has not met its burden to demonstrate that the amount in controversy is met by a preponderance of the evidence, arguing that the McGowan declarations are "inherently unreliable" evidence because defendants' two calculations of the amount in controversy are "orders of magnitude different from each other" and therefore contradictory. Remand Reply at 3-4. Plaintiffs also contend that defendant's estimate of the amount in controversy relies on an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

unreasonable assumption that each employee would be owed back wages for the entire "arbitrary" period between May 21, 2020 and September 30, 2020. Id. at 4. In addition, in response to the Court's question as to why Plaintiffs contend that the total amount in controversy is less than $5 million, Plaintiffs argue for the first time in their supplemental briefing that the amount in controversy should be discounted by the amount of plaintiffs' mitigation of damages, including their receipt of unemployment benefits. Plts. Remand Supp. at 2. As such, plaintiffs calculate that the total amount in controversy is $2,566,429.60, assuming that each laid off employee received $260.00 per week in state unemployment benefits and received $600.00 in CARES Act unemployment benefits each week until that additional support expired on August 1, 2020. Id. at 3.

      The Court finds that defendant has submitted sufficient evidence to establish by a preponderance of the evidence that the amount in controversy exceeds $5 million. A declaration from a company employee is "credible evidence to establish CAFA removal" jurisdiction with respect to the amount in controversy where that employee's testimony cites to "statistics gleaned from defendant's records, such as the number of class members" and explains "where she obtained her figures and how her estimates and averages were calculated." Alvarez v. Office Depot, Inc., No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *2 (C.D. Cal. Nov. 30, 2017) (collecting cases); see also Andrade v. Beacon Sales Acquisition, Inc., No. CV1906963CJCRAOX, 2019 WL 4855997, at *3 (C.D. Cal. Oct. 1, 2019) (declaration estimating that defendants "employed approximately 939 non-exempt employees" who worked "50,720 weeks" at an "average hourly rate [of] $17.98" sufficient to demonstrate amount in controversy). Here, defendant has submitted declaration evidence from McGowan, attaching and relying on data generated from defendant's employment records, that calculates the total back wages in controversy are $19,876,429.60 taking into account the actual number of full-time employees who were laid off (1,500) and their actual average rate of pay ($17.92). See McGowan Supp. Decl. ¶ 6. Defendant's application of a 19 week period between May 21, 2020 and September 30, 2020 is not arbitrary or unreasonable assumption; May 21, 2020 is the first day after defendant conducted layoffs, and September 30, 2020 is the date until which the complaint alleges defendant was required to assure the Secretary of the Treasury that it would "refrain from conducting involuntary layoffs or furloughs." See McGowan Supp. Decl. ¶ 5; Compl. ¶ 20. Likewise, the Court find defendant's assumption that each employee would have worked full-time during the period at issue reasonable, especially given that no reasonable assumption regarding employee leave or vacation time would reduce the amount of wages owed to the class by $14 million.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

Plaintiffs' argument that the class has mitigated its damages by recovering state and federal unemployment benefits does not defeat defendants' showing regarding the amount in controversy. As an initial matter, the extent to which unemployment benefits mitigate the total back wages that are recoverable by the class presents a question of law that must be resolved at a later stage of the proceedings. Moreover, plaintiffs appear to assume—without evidence—that every member of the class was entitled to government unemployment benefits and in fact mitigated their lost wages by applying for and receiving those benefits. As such, the Court concludes that a finding that plaintiffs' damages have been mitigated such that only $2,566,429.60 is truly at issue would be premature and speculative at this stage.

Accordingly, the Court finds that defendant has demonstrated by a preponderance of the evidence that more than $5 million is in controversy. The Court therefore concludes that it has diversity jurisdiction over this action pursuant to CAFA.

### ii. Federal Question Jurisdiction

For purposes of 28 U.S.C. § 1331, the question of whether a claim arises under federal law is determined by reference to the complaint. Franchise Tax Bd. v. Constr. Laborers Trust, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Invoking a federal issue or provision is not "a password opening federal courts to any state action embracing a point of federal law." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). Instead, a claim "arises under" the laws of the United States only if "a well-pleaded complaint establishes either that (1) federal law creates the cause of action or that (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd., 463 U.S. at 27–28.

Here, as the parties agree, the CARES Act provides no private right of action. See MTN to Remand at 9 (Citing American Video Duplicating, Inc. v. City National Bank, et al., 2020 WL 6882735 at *5 (C.D. Cal. Nov. 20, 2020)); MTD at 7-8 (collecting cases). As such, federal jurisdiction is not appropriate on the grounds that federal law "creates the cause of action." Moreover, the absence of a private cause of action means that the doctrine of complete preemption cannot provide an exception to the well-pleaded complaint rule. Hansen v. Grp. Health Coop., 902 F.3d 1051, 1057 (9th Cir. 2018) (complete preemption occurs only where federal law (a) "preempts a state-law cause of action," and (b) "substitutes an exclusive federal cause of action in its place.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

Defendant asserts that federal question jurisdiction is nonetheless proper here because "the complaint raises a disputed federal issue as to whether [defendant] violated the CARES Act" and "a trier of fact must therefore interpret the CARES Act to determine if these alleged layoffs and furloughs violated public policy [], constitute an unlawful, unfair, and/or fraudulent business act or practice, [] or breached a fiduciary duty allegedly owed by [defendant] to its employees as a result of its receipt of funds under the CARES Act." Remand Opp'n at 12. In moving to remand, plaintiffs argue that the complaint does not require an interpretation of the CARES Act because they "are not claiming that Defendant received the money improperly, only that Defendant received money from the federal government under the CARES act" and acted in violation of California state law and public policy. MTN to Remand at 9.

The Ninth Circuit has explained that "the Supreme Court has recognized a 'special and small' category of state-law claims that arise under federal law for purposes of § 1331 "because federal law is a necessary element of the … claim for relief," including certain state-law quiet title actions. City of Oakland v. BP PLC, 969 F.3d 895, 904 (9th Cir. 2020) (quoting Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 699, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)). In most "other cases where parties have sought to invoke federal jurisdiction for state-law claims, the Court has concluded that jurisdiction was lacking, even when the claims were premised on violations of federal law." Id.

Federal jurisdiction over a state-law claim is proper only if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013) (citing Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005)). A case turns on a "substantial question of federal law" for purposes of this test if it "raises substantial questions about the interpretation or validity of a federal statute." City of Oakland, 969 F.3d at 905. "By contrast, a federal issue is not substantial if it is "fact-bound and situation-specific," or raises only a hypothetical question unlikely to affect interpretations of federal law in the future." Id. (collecting cases). Moreover, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue, as Grable separately requires. The substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole." Lyons v. Cucumber Holdings, LLC, No. CV2010571JFWJPRX, 2021 WL 364640, at *6 (C.D. Cal. Feb. 3, 2021). In addition,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

"jurisdiction under § 1331 is unavailable where the federal claim is patently without merit." Yokeno v. Mafnas, 973 F.2d 803, 808 (9th Cir. 1992).

Here, defendant argues that this standard is met because plaintiffs' reliance on the CARES Act raises a substantial federal question that is disputed—"whether Gate Gourmet violated the CARES Act by allegedly laying off and furloughing its employees." Opp'n at 12. However, although plaintiffs' state law claims are indisputably made with reference the CARES Act, plaintiffs' claims do not arise from the disbursement of the federal funds or appear to require an interpretation of the legality of the government's disbursement of funds pursuant to the CARES Act that would raise an important "issue to the federal system as a whole." Rather, plaintiffs' claims here are "fact-bound and situation-specific," See Empire Healthchoice Assur., Inc., 547 U.S. at 701, and appear to rest not on interpretation of what the CARES Act requires, but on the circumstances under which its requirements entered public policy within the meaning of California law and on fact and case-specific questions such as the timing of the adverse employment actions as compared to defendant's application for and receipt of the federal funds. As such, the Court finds that plaintiffs complaint raises federal issues that are too fact-specific and insubstantial to fit within the narrow category of state law claims that support federal subject matter jurisdiction.

Accordingly, the Court concludes that it does not possess subject matter jurisdiction on the basis of a federal question.

Nonetheless, because there is diversity jurisdiction pursuant to CAFA, the Court **DENIES** the motion to remand.

     **b. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Defendant moves to dismiss plaintiffs' complaint in its entirety, arguing both that plaintiffs' common law claims fail because the CARES Act does not provide a private right of action, and that each of plaintiffs' state law claims fails to state a claim upon which relief can be granted. MTD at 1. The Court addresses each of defendant's contentions as follows.

         i. **UCL Claim**

The UCL prohibits "any unlawful, unfair or fraudulent business practice." Cal. Bus. & Prof Code § 17200. "Because Business & Professions Code § 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Hodsdon v. Mars, Inc., 891 F.3d 857, 865 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

2018) (citing Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 181 (1999)). Here, plaintiffs assert that defendant has violated the UCL by engaging in "an unlawful, unfair, and fraudulent business practice." See Compl. ¶ 33. In opposing defendant's motion to dismiss, however, plaintiffs appear to disclaim any claim for violation of the UCL's "fraudulent" prong, instead arguing only that they have stated a claim under the UCL's "unlawful" and "unfair" prongs. See MTD Opp'n at 10-12.

As a threshold matter, plaintiffs must establish standing to obtain one of the remedies available under the statute. "[R]emedies for individuals under the UCL are restricted to injunctive relief and restitution." Walker v. Geico Gen. Ins. Co., 558 F.3d 1025, 1027 (9th Cir. 2009) (quoting Buckland v. Threshold Enters. Ltd., 155 Cal. App. 4th 798, 817 (2007)); see also Cel-Tech Commc'ns, Inc., 20 Cal. 4th at 179. Injunctive relief is only available if the assertedly wrongful conduct is ongoing or likely to recur. Nelson v. Pearson Ford Co., 186 Cal. App. 4th 983, 1015 (2010). Otherwise, to establish an entitlement to restitution, "a plaintiff must demonstrate that the defendant is in possession of money or property taken from [him or] her" or in which plaintiff otherwise has an ownership interest. Asghari v. Volkswagen Grp. of Am., Inc., 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013); see also Zeppeiro v. Green Tree Servicing, LLC, No. 14-CV-01336-MMM-JCX, 2015 WL 12660398, at *11 (C D. Cal. Apr. 15, 2015), aff'd, 679 Fed. Appx. 592 (9th Cir. 2017) (affirming same). The failure to establish an entitlement to injunctive relief or restitution requires dismissal of, or judgment against, a UCL claim. See Walker, 558 F.3d at 1027; see also Kwikset, 51 Cal. 4th at 337 (holding that UCL standing is proper where plaintiff is eligible for injunctive relief or restitution).

Here, the Court finds plaintiffs have not adequately alleged that they are entitled to injunctive relief or to recover restitution in connection with defendant's allegedly unfair and fraudulent conduct. First, with respect to entitlement to injunctive relief, plaintiffs have pled no facts demonstrating that their alleged harms are ongoing or likely to recur. To the contrary, plaintiffs each allege that they are not currently employed by defendant, having been laid off or furloughed. See Compl. ¶ 21. As such, plaintiffs lack standing to seek an injunction because they are not personally threatened by defendant's ongoing unfair or unlawful employment conduct, to the extent that such ongoing conduct is alleged. See e.g. Richards v. Ernst & Young LLP, No. C08-4988 JF(HRL), 2010 WL 682314, at *2 (N.D. Cal. Feb. 24, 2010) (former employee lacked standing to pursue injunctive relief regarding alleged labor code violations on behalf of class made up of current and former employees).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

Second, plaintiffs have not alleged the type of injuries that are compensable by restitution. To the extent that plaintiffs seek to recover "profits and gains resulting from" defendant's decision to lay off employees despite receiving federal payroll support through the CARES Act, plaintiffs have not pled facts demonstrating a vested ownership interest in those funds that would establish a right to restitution. Without more, plaintiffs' allegation that defendant received payroll support funding from the federal government is not sufficient to establish that defendant has "taken" money or property or is otherwise "in possession of funds rightfully belonging" to plaintiffs. See Asghari v, 42 F. Supp. 3d at 1324. Moreover, "nonrestitutionary disgorgement" of funds unlawfully or unfairly obtained from a third party—such as the Department of the Treasury—"is not an available remedy in an individual action under the UCL." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149, 63 P.3d 937 (2003). Likewise, although California courts have sustained claims for restitution under the UCL where plaintiffs seek to recover *earned* wages, such as unpaid overtime, see Cortez v. Purolator Air Filtration Prod. Co., 23 Cal. 4th 163, 178, 999 P.2d 706 (2000), a claim for compensation for loss of future, as yet unearned, wages is a claim for "monetary damages" that is not recoverable under the UCL. See Voris v. Lampert, 7 Cal. 5th 1141, 1154 n. 9, 446 P.3d 284, 293 (2019), reh'g denied (Oct. 23, 2019) ("claims for compensation for work *already performed* qualify as claims for "salaries [or] wages," whereas claims for *unearned* compensation fall under the category of claims for "monetary damages.") (emphasis in original).

Because plaintiffs have not adequately alleged a real or immediate threat that plaintiffs will be subject to illegal conduct by defendant in the future or that plaintiffs have suffered injuries that are compensable by restitution, plaintiffs lack standing to pursue their UCL claim. Accordingly, the Court **GRANTS** defendant's motion to dismiss the claim for violation of the UCL, with leave to amend. In light of plaintiffs' failure to allege facts that support standing, the Court declines to reach defendant's remaining arguments regarding plaintiffs' UCL claim.

### i. Common Law Claims

As a threshold matter, Defendant contends that plaintiffs cannot assert common law claims for wrongful termination in violation of public policy and breach of fiduciary duty because those claims "are predicated on [p]laintiffs' contentions that [defendant] violated the CARES Act" and the CARES Act does not provide a private right of action. MTD at 9. As discussed with respect to the motion to remand, plaintiffs and defendant agree that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

the CARES Act does not provide a private right of action.[1] See MTN to Remand at 9 (Citing American Video Duplicating, Inc. v. City National Bank, et al., 2020 WL 6882735 at *5 (C.D. Cal. Nov. 20, 2020)); MTD at 7-8 (collecting cases).

In arguing that the absence of a private right of action precludes plaintiffs from bringing common law claims that incorporate obligations imposed by the CARES Act, defendant relies principally on the Second Circuit's reasoning in Grochowski v. Phoenix Construction, 318 F.3d 80 (2d Cir. 2003).[2] The Grochowski court considered state law breach of contract and quantum meruit claims brought by third party beneficiaries of employment contracts governed by the Davis-Bacon Act ("DBA"). Id. at 85. The Second Circuit held that plaintiffs' claims as third-party beneficiaries were aimed at enforcing the wage schedules contained in the DBA, which does not provide a private right of action, and thus constituted an "impermissible 'end run' around" the statutory scheme established by Congress. Id. 86.

However, a number of courts have rejected Grochowski's approach and found that the absence of a federal private right of action does not preclude state law claims that refer to or incorporate federal statutes. For example, in Wigod v. Wells Fargo Bank, N.A., the Seventh Circuit declined to adopt the Grochowski "end-run theory" with respect to state law claims referencing the federal Home Affordable Mortgage Program ("HAMP"), instead holding that the "absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." 673 F.3d 547, 581 (7th Cir. 2012). In so holding, the Seventh Circuit noted that the Supreme Court has on many occasions "confronted issues of subject

---

[1] Although plaintiffs' opposition does not specifically address defendant's argument that the absence of a private right of action defeats their state common law claims, plaintiffs argue that each claim states a claim upon which relief can be granted. See generally Opp'n. Accordingly, the Court declines to find that plaintiffs have waived or abandoned their common law claims pursuant to Local Rule 7-9.

[2] Defendant's remaining case law citations are inapposite because each addresses the question of whether the Court may infer a private right of action in a federal statute, not whether state common law claims are preempted by federal law. See Profiles, Inc. v. Bank of Am. Corp., 453 F. Supp. 3d 742, 748 (D. Md. 2020) (finding no implied private right of action in the CARES Act); Hoopes v. Equifax, Inc., 611 F.2d 134 (6th Cir. 1979).

Case 2:20-cv-11033-CAS-JPR   Document 29   Filed 02/22/21   Page 16 of 20   Page ID #:340

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

matter jurisdiction presented by state common-law claims that incorporate federal standards of conduct, without so much as a peep about whether state law may do so without being preempted." Id.

The Ninth Circuit has not squarely addressed this particular issue, but several California district courts have followed the Seventh Circuit. For example, a California district court recently followed Wigod, finding that "lack of a private federal right of action does not automatically preclude state-law claims that refer to or incorporate" the requirements of a federal statute, and noted specifically that Wigod is consistent with the approach followed by California appellate courts. Hernandez v. Wells Fargo & Co., No. C 18-07354 WHA, 2019 WL 2359198, at *3 (N.D. Cal. June 3, 2019) ("Since the appellate court's decision in Wigod, our court of appeals and California appellate courts have similarly allowed state-law claims based on HAMP-required loan modifications to proceed past the pleading stage.") (collecting cases); see also Smith v. Bank of Am., N.A., No. CV146668DSFPLAX, 2018 WL 6071048, at *3 (C.D. Cal. July 2, 2018) (following Wigod and explaining that the "end-run theory […] is an attempt at preemption without having to follow established preemption doctrines.").

On balance, the Court finds the reasoning of Wigod persuasive. As such, the Court similarly finds that the absence of a private right of action from the CARES Act, which does not expressly prohibit state law claims, does not require dismissal of plaintiffs' common law claims for wrongful termination in violation of public policy and breach of fiduciary duty. Accordingly, the Court addresses the substance of each claim in turn.

### 1. Wrongful Termination in Violation of Public Policy

Plaintiffs allege that they and other members of the class were laid off by defendant in violation of a public policy established by the CARES Act. Id. ¶ 31. More specifically, plaintiffs allege that that airline industry employers receiving payroll support through the CARES Act are required to provide assurances to the Secretary of the Treasury that they will "use such payments exclusively for the continuation of employee wages, salaries, and benefits; and refrain from conducting involuntary layoffs or furloughs until September 30, 2020," and contend that requirement establishes a public policy directed at reducing air industry unemployment due to COVID-19. Compl. ¶¶ 17-20, 31. Defendant argues that the claim for wrongful termination in violation of public policy should be dismissed, both because plaintiffs have not alleged that they were discharged for engaging in a protected

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

activity, and because plaintiffs' allegations are insufficient to establish the existence of a public policy. Mot. at 1.

A claim for wrongful termination in violation of public policy "requires only a termination in retaliation for engaging in an activity protected by public policy." Hobson v. Raychem Corp., 73 Cal. App. 4th 614, 632 (1999) (internal quotation marks and citation omitted) (abrogated on other grounds). The protected "activity must be based on a statutory or constitutional right." Id. The California Supreme Court has explained that protected activities generally "fall into one of four categories: the employee (1) refused to violate a statute; (2) performed a statutory obligation; (3) exercised a constitutional or statutory right or privilege; or (4) reported a statutory violation for the public's benefit." Green v. Ralee Eng'g Co., 19 Cal. 4th 66, 76, 960 P.2d 1046 (1998). In addition, there must be a causal connection between the protected activity and the adverse employment action. See Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1258-1259 (1994) (rejecting claim for wrongful discharge in violation of public policy in part because plaintiff failed to show "the required nexus between his reporting of alleged statutory violation and his allegedly adverse" discharge.).

Here, the Court finds that plaintiffs have not sufficiently alleged that they were terminated for engaging in a protected activity. As defendant notes, plaintiffs' complaint does not contain any allegation that plaintiffs were discharged because they exercised a protected right or because they refused to engage in illegal conduct. Instead, plaintiffs allege only that they were each employed by defendant when the CARES Act was signed into law on March 27, 2020, at which time defendant "was aware and put on notice that federal fund[s] would be made available to them with the purpose of protecting workers and helping retain employees." Compl. ¶ 21. Plaintiffs also allege that on approximately March 28, 2020, defendant "began to layoff and/or furlough hundreds of employees including [p]laintiffs after the CARES Act had been signed into law." Id. Those allegations, without more, are insufficient to support a claim on the grounds that plaintiffs engaged in a protected activity or were discharged because of that protected activity. As such, plaintiffs have not stated a claim for wrongful discharge in violation of public policy.

Accordingly, defendant's motion to dismiss as to the claim for wrongful termination in violation of public policy is **GRANTED**, with leave to amend. In light of plaintiffs' failure to allege facts sufficient to establish that they were discharged for participating in a protected activity, the Court declines to reach defendant's remaining arguments that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

complaint fails to sufficiently allege that the CARES Act establishes a "fundamental public policy" that is implicated by plaintiffs' terminations.

### 2. Breach of Fiduciary Duty

Defendant argues that plaintiffs' claim for breach of fiduciary duty must be dismissed because plaintiffs fail to allege a legally cognizable fiduciary relationship. MTD at 20. To state a claim for breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary relationship; (2) the breach of that relationship; and (3) damage proximately caused by the breach. Roberts v. Lomanto, 112 Cal. App. 4th 1553, 1562 (2003). Under California law, a fiduciary relationship exists only where established by agreement or as a matter of law. See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386, 181 P.3d 142, 150 (2008) ("[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law.").

Here, the complaint fails to present any non-conclusory allegations sufficient to establish the existence of a fiduciary relationship between the parties. Plaintiffs allege that the CARES Act establishes a fiduciary duty because it provides "federal money [to] Defendants for the sole purpose of the continuation of payment of employee wages, salaries, and benefits." Compl. ¶¶ 44, 46. However, plaintiffs fail to point to any specific provision of the CARES Act that gives rise to a fiduciary relationship, including based on defendant's receipt of federal funds. Likewise, plaintiffs do not allege the existence of any agreement or representation through which defendant undertook to act as a fiduciary for its employees. See Foley v. Interactive Data Corp., 47 Cal. 3d 654, 690–693 (1988) (ordinarily, no "special relationship" establishes fiduciary obligations between employer and employee in the wrongful discharge context). Accordingly, the Court finds that plaintiffs' allegations are insufficient to state a claim for breach of fiduciary duty.

Defendant's motion to dismiss the claim for breach of fiduciary duty is **GRANTED**, with leave to amend.

### c. Motion to Strike Pursuant to Rule 12(f)

Defendant moves to strike from the prayer for relief all references to attorneys fees, the prayer for restitution in connection with plaintiffs' UCL claim, and all references to injunctive relief. MTS at 1-2. Defendant argues that each form of relief is unavailable to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
|---|---|---|---|
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

plaintiffs as a matter of law. Id. Specifically, defendant contends: (1) that attorneys fees are not recoverable in connection with any of plaintiffs claims because plaintiffs have not established that their suit will benefit a "large class of persons" pursuant to Cal. Code Civ. P. § 1021.5 and the UCL does not provide for attorneys fees; (2) injunctive relief is not available because plaintiffs have an adequate remedy at law and are not in imminent danger of future irreparable harm; and (3) "[p]laintiffs' Prayer for restitution is incompatible with [p]laintiffs' COA for relief under the UCL," both because plaintiffs lack standing to seek disgorgement of funds defendant obtained from the U.S. Treasury and because unearned backpay may not be recovered as restitution as a matter of California law. See MTS at 3-9. In reply, defendant argues for the first time that these requests for relief "are immaterial and impertinent to [p]laintiffs' claims because the relief sought is unavailable." MTS Reply at 5.

In opposition, plaintiffs contend that defendant's motion must be denied because the Ninth Circuit has held that "Rule 12(f) does not authorize courts to strike claims for damages on the ground that such claims are precluded as a matter of law." MTS Opp'n at 4 (quoting Whittlestone, Inc. v. Handi-Craft Company, 618 F.3d 970, 974 (9th Cir. 2010)).

In Whittlestone, the Ninth Circuit explained that a Rule 12(f) motion to strike may be granted only if the material the movant seeks to strike is "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." 618 F. 3d at 973-74. A matter is "immaterial" within the meaning of Rule 12(f) if it "has no essential or important relationship to the claim for relief or the defenses being plead," and "impertinent" matters are "statements that do not pertain, and are not necessary, to the issues in question." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010) (internal citations omitted).

"A claim for relief, regardless of form, is not immaterial to a plaintiffs complaint" or "impertinent because whether these damages are recoverable pertains directly to the harm being alleged." Thomas-Byass v. Michael Kors Stores (California), Inc., No. EDCV15369JGBKKX, 2015 WL 13756100, at *3 (C.D. Cal. Sept. 16, 2015). In addition, courts in this circuit have applied Whittlestone to requests for relief other than damages, including injunctive relief and attorneys fees. See e.g. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1195 (C.D. Cal. 2010) (injunctive relief); Powell v. Wells Fargo Home Mortg., No. 14-CV-04248-MEJ, 2017 WL 2720182, at *7 (N.D. Cal. June 23, 2017) (attorney's fees).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-11033-CAS-JPRx | Date | February 22, 2021 |
| Title | CHARLES SCOTT ET. AL. V. GATE GOURMET, INC. ET. AL. | | |

Here, it appears to the Court that defendant's motion to strike does not target truly inappropriate or unnecessary material, but is instead "really an attempt to have certain portions of the complaint dismissed or to obtain summary judgment." Thomas-Byass, 2015 WL 13756100, at *3 (quoting Whittlestone). As discussed *supra,* the Court concludes that plaintiffs have not adequately alleged standing to obtain injunctive relief or restitution pursuant to the UCL and dismisses plaintiffs' UCL claim on that basis. However, because plaintiffs' requests for attorney's fees, injunctive relief, and restitution pursuant to the UCL do not appear to be redundant, immaterial, impertinent, or scandalous within the meaning of Rule 12(f), the Court declines to strike plaintiffs' requests. To the extent that defendant believes the relief plaintiffs seek is unsupported by facts or unavailable as a matter of law, defendant's arguments are better resolved on a Rule 12(b)(6) motion or a motion for summary judgment.

Accordingly, the Court **DENIES** defendant's motion to strike portions of plaintiffs' prayer for relief.

### V. CONCLUSION

In accordance with the foregoing, the Court orders as follows:

1. The Court **DENIES** plaintiffs' motion to remand.

2. The Court **GRANTS** defendant's motion to dismiss plaintiffs' UCL claim, with leave to amend

3. The Court **GRANTS** defendant's motion to dismiss plaintiffs' claim for wrongful termination in violation of public policy, with leave to amend.

4. The Court **GRANTS** defendant's motion to dismiss plaintiff's claim for breach of fiduciary duty, with leave to amend.

5. The Court **DENIES** defendant's motion to strike.

Plaintiffs shall have **twenty-one (21)** days to file an amended complaint

IT IS SO ORDERED.

                                                                           00 : 03
Initials of Preparer            CMJ