GREGORY P. WONG (SBN: 204502)
HEATHER K. COX (SBN: 278898)
BARKHORDARIAN LAW FIRM, PLC
6047 Bristol Parkway, Second Floor
Culver City, CA 90230
Telephone: (323) 450-2777
Email: Heather@barklawfirm.com

Attorneys for Plaintiff
Charles Scott, Brenda McCoy, Dominique Ferdinand, and on behalf of themselves and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES SCOTT, an individual; BRENDA MCCOY, an individual; DOMINIQUE FERDINAND, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GATE GOURMET, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 2:20-cv-11033<br><br>Assigned to Hon. Christina A. Snyder<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. **Wrongful Termination; and,**<br>2. **Violation of California Business and Professions Code Sections 17200, et seq.**<br><br>**UNLIMITED CIVIL**<br><br>**DEMAND FOR JURY TRIAL** |

1
FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Charles Scott (hereafter "Plaintiff Scott"), Brenda McCoy (hereafter "Plaintiff McCoy"), and Dominique Ferdinand (hereafter "Ferdinand") (collectively referred as "Plaintiffs") on behalf of themselves and all others similarly situated, alleges and states as follows:

## JURISDICTION AND VENUE

1. This class action is brought pursuant to California Code of Civil Procedure section 382. The monetary damages and restitution sought by Plaintiffs exceed the minimal jurisdiction limits of the California Superior Court and will be established according to proof at trial.

2. On October 27, 2020, Plaintiffs originally filed this class action in the Los Angeles Superior Court where the Court has jurisdiction over this action and the matters alleged herein pursuant to the grant of original jurisdiction set forth in Article VI, Section 10 of the California Constitution.

3. Further, the California Superior Court has jurisdiction over Defendant, because, upon information and belief, Defendant is either a citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by this Court consistent with traditional notions of fair play and substantial justice.

4. On or about December 4, 2020, Defendant removed the matter to this federal Court pursuant to diversity jurisdiction. 28 U.S. Code section 1332 and the Court determined that it had jurisdiction.

5. Venue is proper in this Court, because, upon information and belief, the named Defendant resides, transacts business, or has offices in Los Angeles county, and the acts or omissions alleged herein took place in this county.

## THE PARTIES

6. At all times relevant herein, Plaintiff Charles Scott ("Plaintiff Scott") was, and is, an individual residing in the City of Long Beach, County of Los Angeles, State of California.

7. At all times relevant herein, Plaintiff Brenda McCoy ("Plaintiff McCoy") was, and is, an individual residing in the City of Los Angeles, County of Los Angeles, State of California.

8. At all times relevant herein, Plaintiff Dominique Ferdinand ("Plaintiff Ferdinand") was, and is, an individual residing in the City of Los Angeles, County of Los Angeles, State of California.

9. Plaintiffs are informed and believe, and based thereon allege, that at all times relevant herein, Defendant Gate Gourmet, Inc. (hereinafter together with its employees, agents, subsidiaries, and affiliates, "Defendant" or "GATE GOURMET"), was, and is, a Delaware corporation doing business in the County of Los Angeles, State of California.

10. Plaintiffs are unaware of the true names and capacities of Defendants named herein as DOES 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege such names and capacities when the same has been ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants stated herein bears a legal responsibility to Plaintiffs similar to that of the named Defendant herein.

11. At all times mentioned herein, Defendants DOES 1 through 100, inclusive, were the agents, servants, and employees of their Co-Defendants, and in doing the things herein alleged were acting in the scope of their authority as such agents, servants, and employees, and with the permission and consent of their Co-Defendants.

12. Plaintiffs hereby demand a trial by jury.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

13. Plaintiffs bring this action individually, as well as on behalf of each and all persons similarly situated, and thus, seeks class certification under California Code of Civil Procedure section 382.

14.   Plaintiff Scott began working for GATE GOURMET in or about 2017 as a Chef and was involuntarily laid off on or about March 28, 2020.  Plaintiff Scott was offered reinstatement on a temporary basis in January 2021 and was rehired on February 1, 2021 with a fulltime schedule.

15.   Plaintiff McCoy began working for GATE GOURMET in or about early 2019 in food assembly and was involuntarily laid off on or about March 28, 2020. Plaintiff McCoy was offered reinstatement on a temporary basis in January 2021.

16.   Plaintiff Ferdinand began working for GATE GOURMET in or about February 11, 2019 as an equipment handler and was involuntarily laid off on or about March 20, 2020.  Plaintiff Ferdinand was offered reinstatement on a temporary basis in January 2021 and was rehired on or about February 1, 2021 with a fulltime schedule.

17.   In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. section 9001, et seq. (hereinafter the "CARES Act") was signed into law.  The CARES Act provided significant federal funding to support multiple industries affected by the Coronavirus Disease 2019 (hereinafter "COVID-19") pandemic, including the airline industry.  The CARES Act was negotiated and signed after other relief bills signed in early March 2020 were inadequate to fully address the economic impact of the COVID-19 pandemic.

18.   The stated purpose and public policy behind the CARES Act is to address the profound economic disruption arising from the unprecedented COVID-19 global pandemic and Congress intended to reduce the amount of unemployment that would otherwise flow from the impact of COVID-19 on the economy, and to protect vulnerable workers.

19.   According to the United States Department of Treasure website regarding the CARES Act, the CARES Act is for "over $2 trillion economic relief package" with the purpose of "protecting the American people from the public

1  health and economic impacts of COVID-19" which includes "direct economic assistance for American workers, families, and small businesses, and preserve jobs for our American industries." (https://home.treasury.gov/policy-issues/cares) The United States Department of Treasure website regarding Section 4112 of the CARES Acts states the purpose of the Act is to "provides payroll support to passenger air carriers, cargo air carriers, and certain contractors for the continuation of payment of employee wages, salaries, and benefits." (https://home.treasury.gov/policy-issues/cares/preserving-jobs-for-american-industry/payroll-support-program-payments)

20. GATE GOURMET is a provider of airline catering and provisioning services for airlines and so qualified as an "airline catering services" under the CARES Act, Title IV, Subtitle B, section 4111.

21. On or about April 3, 2020, GATE GOURMET, with its parent company gategroup US Holding Inc., submitted an application for payroll support pursuant to Division A, Title VI, Subtitle B of the CARES Act. In that application, GATE GOURMET was required to identify the number of average employees in 2019 and the involuntary reductions after March 1, 2020.

22. GATE GOURMET was awarded an initial payroll support of $87,712,299 from the federal government under the CARES Act. Plaintiffs are informed and believe, and based thereon allege, that the total anticipated payroll support is estimated at $171,424,598 for GATE GOURMET, the second highest amount anticipated for contractors though the payroll support program under the CARES Act.

23. Plaintiffs are informed and believe, and based thereon allege, that, as part of the application to receive federal funds under the CARES Act, GATE GOURMET was required to make several assurances including that, pursuant to sections 4113(b)(1)(A) and 4114 of the CARES Act, Defendant would use such payments exclusively for the continuation of employee wages, salaries, and

benefits; and refrain from conducting involuntary layoffs or furloughs until September 30, 2020.

24. On or about March 28, 2020 and continuing on through the present, GATE GOURMET began to layoff and/or furlough hundreds of employees including Plaintiffs after the CARES Act had been signed into law. GATE GOURMET was aware and put on notice that federal funds would be made available to them with the purpose of protecting workers and helping to retain employees. GATE GOURMET'S actions are in direct contravention to the purpose behind the financial bail-out GATE GOURMET applied for and received under the CARES Act.

25. Plaintiffs are informed and believe, and based thereon allege, that GATE GOURMET employed on average approximately 10,000 employees in 2019. Plaintiffs are further informed and believe, and based thereon allege, that GATE GOURMET performed involuntary layoffs of at least 1,500 employees in between March 1, 2020 and September 30, 2020, which is approximately 15% of its workforce.

26. These layoffs have and will continue to cause irreparable harm to GATE GOURMET'S affected employees, including eliminating employer sponsored health insurance during a pandemic and during a time when unemployment is at an all-time high.

27. Plaintiffs are informed and believe, and based thereon allege, that in or about January 2021, GATE GOURMET offered a return to employment on a temporary basis to the involuntarily terminated employees.

## CLASS ALLEGATIONS

28. Plaintiffs bring this action individually, as well as on behalf of each and all persons similarly situated, and thus, seeks class certification under California Code of Civil Procedure section 382 and/or Federal Rule of Civil Procedure 23.

29. All claims alleged herein arise under California law for which Plaintiffs seek relief authorized under California law.

30. Plaintiffs seek to represent a class of all of Defendant's former employees working in the state of California who were involved in a layoff after March 27, 2020, when it would become clear that Congress intended to implement a bill which would provide money for the airline industry, including providing federal money to companies in need to continue to employ their employees.

31. The members of the proposed Class are so numerous that joinder of all members would be unfeasible and not practicable. The membership of the entire Class is unknown to Plaintiffs at this time; however, the class is estimated to be greater than one hundred (100) individuals and the identity of the class membership is readily ascertainable by inspection of Defendant's payroll and personnel records.

32. Plaintiffs are, and have been, at all material times, members of the Class. Plaintiffs are qualified to, and will, fairly and adequately represent the interests of each class member with whom there is a shared, well-defined, community of interests. Plaintiffs' claims are typical of all class members' claims as they arise out of the same course of conduct and are predicated on the same violations of law.

33. There are questions of law and fact as to the class which predominate over questions affecting only individual members including, without limitation:

    (a) Whether Defendant's layoff and/or furlough of hundreds of employees goes against public policy after Defendant knew or should have known that federal money was and/or would be made available for the purpose of retaining employees;

    (b) Whether Defendant's conduct was willful or reckless.; and

    (c) The appropriate amount of damages, restitution, and/or monetary penalties resulting from Defendant's violations of public policy.

34. The Court should permit this action to be maintained as a class action

pursuant to California Code of Civil Procedure section 382 and/or FRCP 23, because:

    (a)    Questions of law and fact common to the Class predominate over any questions affecting individual members;

    (b)    The Class Action mechanism is superior to any other available method for the fair and efficient adjudication of the claims of the Class Members;

    (c)    The Class Members are so numerous that it is impractical to bring all members of the Class before the Court;

    (d)    Plaintiffs, and the Class Members, will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

    (e)    There is a community of interest in obtaining appropriate legal and equitable relief for the statutory violations, and in obtaining adequate compensation for the damages and injuries for which Defendant is responsible in an amount sufficient to adequately compensate the members of the Class for the injuries sustained;

    (f)    Without Class Certification, the prosecution of separate actions by individual members of the Class would create a risk of:

        (i)    Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant; and/or,

        (ii)    Adjudications with respect to the individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests, including, but not limited to, the potential for exhausting the funds available from those parties who are, or may be, responsible for Defendant; and

    (g)    Defendant has acted or refused to act on grounds generally

applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

**(Wrongful Termination in Violation of Public Policy – Against all Defendants)**

35. Plaintiffs refer to and incorporates herein by reference the above paragraphs as though fully set forth herein.

36. Plaintiffs and Class Members claim that they were discharged from employment on or about March 28, 2020, after the passage of the CARES Act and have not been rehired by GATE GOURMET until January 2021, if at all which occurred well after GATE GOURMET received federal funding for the purpose of retaining employees. This lay off is and was in violation of public policy in the GATE GOURMET applied for and accepted federal money and defied the purpose of the money by proceeding with a layoff of hundreds of employees. GATE GOURMET essentially relied on the federal government to both support the company with the promise to retain employees, and then also support the terminated employees until GATE GOURMET deemed it economically viable to rehire the terminated employees.

37. California courts first recognized a public policy exception to the at-will employment doctrine in *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 and reaffirmed its commitment to that principle on several occasions including in *Foley v. Interactive Data Corp.*, (1988) 47 Cal.3d 654; *Shoemaker v. Myers* (1990) 52 Cal.3d 1, and *Rojo v. Kliger*, (1990) 52 Cal.3d 65.

38. In *Foley v. Interactive Data Corp.*, supra, 47 Cal.3d 654, the court determined that this cause of action " 'reflects a duty imposed by law upon all employers in order to implement the fundamental public policies [of the state]. As such, a wrongful discharge suit exhibits the classic elements of a tort cause of action.' " (*Id*. at p. 668, quoting Tameny, supra, 27 Cal.3d at p. 176.).

39. As stated in *Foley v. Interactive Data Corp.*, supra, 47 Cal.3d at p. 669, the policy "inures to the benefit of the public at large rather than to a particular employer or employee." "Public policy" refers to the principle that "no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good …" *Gantt v. Sentry Ins.*, 1 Cal.4th 1083,1094 (1992) (overruled on other grounds by *Green v. Ralee Eng. Co.*, 19 Cal.4th 66 (1998)).

40. In *Rojo v. Kliger*, supra, 52 Cal.3d at p. 90, the court rejected defendant's argument that "*Tameny* claims should be limited to situations where, as a condition of employment, the employer "coerces" an employee to commit an act that violates public policy, or "restrains" an employee from exercising a fundamental right, privilege or obligation. … Although decided in the factual contexts of coercion (*Tameny, supra,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330) and restraint (*Foley, supra,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373), neither *Tameny* nor *Foley* excludes wrongful discharge claims based solely on sex discrimination or sexual harassment. To the contrary, the cases strongly imply that an action for wrongful discharge will lie when, as here, the basis of the discharge contravenes a fundamental public policy."

41. Plaintiffs allege that the "basis of the discharge" in this case contravenes a fundamental public policy, because by applying for and receiving federal money from the CARES Act, GATE GOURMET had a duty to continue to employ its workforce, especially in a pandemic where access to employer sponsored health insurance for individuals and families was and is essential for the general public to help control the spread of COVID-19.

42. Further, GATE GOURMET essentially shed its costs of its workforce onto the government by significantly reducing its workforce while also asking for and receiving government money to support that workforce. Then, at a time convenient for the company and well after applying for and receiving federal money to support that workforce, turns around and re-offers employment to those

former employees, most of which surviving with the assistance of government money through unemployment payments. These actions are against public policy.

43. Plaintiffs and the class members are informed and believe, and based thereon allege that as a direct and proximate result of the acts alleged herein, Plaintiffs have suffered and continue to suffer economic detriment and monetary damages, including, but not limited to, loss of wages and benefits in an amount to be determined at trial.

44. Plaintiffs and the class members are informed and believe and based thereon allege, that as a further direct and proximate result of the acts alleged herein, Plaintiffs and the class members have suffered and continue to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, emotional and physical distress, pain and suffering, and has been generally damaged in an amount to be determined at trial.

45. Plaintiffs and the class members are informed and believe, and based thereon allege, that Defendant willfully engaged in the conduct alleged herein with malice, fraud, and oppression, without excuse or justification, and with the specific intent to injure Plaintiffs and the class members for an improper and evil motive which constitutes a malicious and conscious disregard of Plaintiffs' and the class members rights. By reason thereof, Plaintiffs and the class members are entitled to an award of exemplary and punitive damages against Defendant sufficient to punish and deter Defendant from engaging in such conduct in the future in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**(Violation of California Business and Professions Code Sections 17200 Et Seq. – Against All Defendants)**

46. Plaintiffs refer to and incorporates herein by reference the above paragraphs as though fully set forth herein.

47. California Business and Professions Code sections 17200, et seq., prohibits acts of unfair competition which means and includes "any unlawful, unfair, or fraudulent business act or practice."

48. Standing - Restitution: Plaintiffs allege in this action that GATE GOURMET unlawfully laid off and/or furloughed Plaintiffs and the putative class even as it applied for and accepted funding under the CARES Act under the guise of retaining its employees. GATE GOURMET received over $171 million under the CARES Act for the express objective of keeping its employees working, which it purposefully failed to do with respect to Plaintiffs and the member of the putative class. Plaintiffs have suffered injury in fact and are entitled to restitution in the form of lost backpay as a result of GATE GOURMET'S actions. *See Cortez v. Purolator Air Filtration Products, Co*., 23 Cal.4th 163, 178 (2000) ("[B]ackpay may be a form of restitution" for purposes of the UCL); *NLRB v. Bridgeway Oldsmobile, Inc*., 933 F.2d 1015 (9th Cir. 1991) (Backpay awarded as restitution where employer engaged in unfair labor practices in violation of National Labor Relations Act); *Hartless v. Clorox, Co*., 2007 WL 3245260, *8 (C.D. Cal., Nov. 2, 2007) (Restitution available to "actual direct victim" of alleged UCL violations).

49. Standing – Injunctive Relief: Plaintiffs further allege in this action that GATE GOURMET has engaged in a pattern and practice of laying off, furloughing, and recalling employees (including Plaintiffs) - essentially treating its employees as an on-demand/ *per diem* workforce as it sees fit, all in contravention of the public policy and states purposes of the CARES Act. Plaintiffs allege such conduct is ongoing and continues to this date and, unless enjoined, GATE GOURMET could foreseeably reinstitute layoffs and furloughs in the event the Coronavirus pandemic surges yet again.

50. Within the four (4) years preceding the filing of this action, Defendant has engaged in unlawful, unfair, and/or fraudulent business acts and/or practices by engaging in the conduct set forth above. These business acts and practices violated

FIRST AMENDED CLASS ACTION COMPLAINT

numerous provisions of the law, including, but not limited to, California public policy. Plaintiff reserves the right to identify additional violations of law as further investigation warrants.

51. Defendant's acts and practices, as detailed above, constitute acts of unfair competition. Defendant has engaged in an unlawful, unfair, and/or fraudulent business act and/or practices within the meaning of California Business and Professions Code sections 17200, et seq.

52. By reason of Defendant's fraudulent, deceptive, unfair, unlawful, and other wrongful conduct, as alleged herein, Defendant has violated California Business and Professions Code sections 17200, et seq., by consummating an unlawful, unfair, and fraudulent business practice designed to deprive Plaintiffs, the members of the Class, and members of the general public of their legal rights.

53. By reason of the foregoing, Plaintiffs, class members, and members of the general public have suffered, and continue to suffer, damages, and are therefore entitled to the relief available under California Business and Professions Code sections 17200, et seq., including, but not limited to, restitution, disgorgement, and injunctive relief.

54. As such, Plaintiffs, class members, and the general public, seeks a temporary, preliminary, and/or permanent order from this Court prohibiting Defendant from continuing to engage in the unlawful, unfair, and/or fraudulent business acts or practices set forth in this Complaint, in addition to disgorgement and restitution by Defendant to all persons with a vested interest therein who have been adversely affected by the practices at issue.

## PRAYER FOR DAMAGES

WHEREFORE, Plaintiffs and the class members, and each of them, pray for judgment against Defendants, and DOES 1 through 100, inclusive, and each of them, jointly and severally, as follows:

## ON THE FIRST CAUSE OF ACTION

### (Wrongful Termination)

1. For lost wages for Plaintiffs and the class members and benefits and other monetary relief in an amount to be determined at trial;
2. For prejudgment interest on lost wages and benefits:
3. For compensatory damages in an amount to be determined at trial;
4. For general and special damages in an amount to be determined at trial;
5. For an injunction permanently enjoining Defendant from continuing to engage in any further acts of unfair, unlawful, and/or fraudulent business acts and/or practices;
6. For punitive damages in an amount to be determined at trial; and
7. For attorneys' fees: and
8. For such other and further relief as this Court may deem just, fair, and proper.

## ON THE SECOND CAUSE OF ACTION

### (Unfair Business Practice)

1. For restitution of all profits and gains resulting from Defendant's unfair, unlawful, and/or fraudulent business acts and/or practices to Plaintiffs, class members, and all persons with a vested interest therein who have been adversely affected by the practices at issue;
2. For an injunction permanently enjoining Defendant from continuing to engage in any further acts of unfair, unlawful, and/or fraudulent business acts and/or practices;
3. For reasonable attorneys' fees and for costs of suit incurred herein; and,

///

///

///

4. For such other and further relief as this Court may deem just, fair, and proper.

DATED: April 5, 2021

Respectfully Submitted,

BARKHORDARIAN LAW FIRM, PLC

*/s/ Heather K. Cox*

_____
Gregory P. Wong
Heather K. Cox
Attorneys for Plaintiffs, Charles Scott, Brenda McCoy, Dominique Ferdinand, behalf of themselves and all others similarly situated

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury as provided in Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: April 5, 2021

Respectfully Submitted,

BARKHORDARIAN LAW FIRM, PLC

*/s/ Heather K. Cox*

_____
Gregory P. Wong
Heather K. Cox
Attorneys for Plaintiffs, Charles Scott, Brenda McCoy, Dominique Ferdinand, behalf of themselves and all others similarly situated

|  |  |
|---|---|
| PROOF OF SERVICE<br>(CCP §§ 1013(A) AND 2015.5) | |
| State of California, | **Case No.: 2:20-cv-11033** |
| County of Los Angeles | |

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action; my business address is 6047 Bristol Parkway, Culver City, CA 90230.

On April 5, 2021, I served the foregoing document described as:

First Amended Class Action Complaint

on the interested parties in this action by placing same in a sealed envelope, as follows:

Jill A. Porcaro
Jporcaro@seyfarth.com
Seyfarth Shaw LLP
2029 Century Park East Suite 3500
Los Angeles, CA  90067-302

☐ **(BY MAIL)** – I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in Culver City, California.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Costa Mesa, California, in the ordinary course of business. I am fully aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing an affidavit.

☒ **(BY E-MAIL)** – Based on a Court order or an agreement by the parties to accept service by e-mail or electronic transmission, I caused the documents described above to be sent by e-mail to the persons at the e-mail addresses listed above. I did not receive, within a reasonable amount of time after transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **(BY FACSIMILE)** – I caused the above described document(s) to be transmitted to the offices of the interested parties at the facsimile number(s) indicated on the attached Service List and the activity report(s) generated by facsimile number (310) 215.3416 indicating on all pages that they were transmitted.

☐ **(BY PERSONAL SERVICE)** – I caused such envelope(s) to be delivered by hand to Defendant.

☒ **(STATE)** – I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ **(FEDERAL)** – I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*/s/ Evelyn Monreal*

EVELYN MONREAL