1 Diana Tabacopoulos (SBN 128238)
*dtabacopoulos@seyfarth.com*
2 Jill A. Porcaro (SBN 190412)
*jporcaro@seyfarth.com*
3 SEYFARTH SHAW LLP
2029 Century Park East, Suite 3500
4 Los Angeles, California 90067-3021
Telephone: (310) 277-7200
5 Facsimile: (310) 201-5219

6 Attorneys for Defendant
GATE GOURMET, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES SCOTT, an individual; BRENDA MCCOY, an individual; DOMINIQUE FERDINAND, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GATE GOURMET, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:20-cv-11033-CAS-JPR<br><br>**DEFENDANT GATE GOURMET'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(B)(6)**<br><br>[Los Angeles Superior Court Case No. 20STCV41416]<br><br>Date: May 24, 2021<br>Time: 10:00 a.m.<br>Crtrm: 8D<br>Judge: Hon. Christina A. Snyder<br><br>Complaint Filed: October 27, 2020<br>Trial Date: None |

# **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ........................................................................................................2

    A. Plaintiffs Fail To Establish That They Have Sufficiently Pled a Viable Public Policy to Support Their Claim for Wrongful Termination ..................2

        1. Plaintiffs Concede That Their Claims Do Not Arise From Their Engagement in a Protected Activity ......................................................2

        2. Plaintiffs Still Fail To Articulate Any "Substantial" Or "Fundamental" Public Policy, "Firmly Established" At The Time Of Discharge, That Was Allegedly Violated By Gate Gourmet ..................................................................................................4

    B. Plaintiffs' Opposition Still Fails to Establish that They Have Adequately Pled a Claim For Violation of the UCL........................................6

    C. Plaintiffs Still Lack Standing to Pursue Equitable Relief Under the UCL ..................................................................................................................9

        1. The FAC Still Fails to Identify any Irreparable Harm to Support a Claim for Injunctive Relief Under the UCL .....................................9

        2. Plaintiffs' Claim For Restitution/Disgorgement is Also Contrary to the Court's Order Dismissing the Complaint ..................10

    D. Plaintiffs May Not Recover Attorney's Fees Under the Private Attorney General Act in Connection with Either of Their Claims ...............11

    E. Leave To Amend Should Be Denied ............................................................12

III. CONCLUSION...................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Andrews v. Plains All American Pipeline, L.P.*,
  2017 WL 10543401 (C.D. Cal August 25, 2017)..........................................................8

*Philips v. Ford Motor Co.*,
  2015 WL 4111448 (N.D. Cal. July 7, 2015.) ...............................................................9

*Smith v. Chase Mortg. Credit Grp.*,
  653 F. Supp. 2d 1035 (E.D. Cal. 2009) ...................................................................7, 8

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ....................................................................................13

*Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir. 2004) ....................................................................................13

**State Cases**

*Ali v. L.A. Focus Publication*,
  112 Cal. App. 4th 1477 (2003) ....................................................................................5

*Cambridge Electronics Corp.*,
  227 F.R.D. 313 (2004) ..................................................................................................9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .................................................................................................7

*Foley v. Interactive Data Corp.*,
  47 Cal.3d 654 (1988) ...................................................................................................4

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*,
  107 Cal. App. 4th 1336 (2003) ....................................................................................9

*Reid v. Google, Inc.*
  50 Cal. 4th 512 (2010) .................................................................................................5

*Rojo v. Kliger*,
  52 Cal. 3d 65 (1990) .............................................................................................. 2, 3

*Silquero v. Creteguard, Inc.*,
  187 Cal. App. 4th 60 (2010) ........................................................................................3

*Tameny v. Atlantic Richfield Co.*,
  27 Cal. 3d 167 (1980) ..................................................................................................3

**State Statutes**

Bus. & Prof. C. § 17204..................................................................................................7

Cal. Code Civ. Proc. § 1021.5 ................................................................................ 2, 12

California Labor Code § 2922 ....................................................................................... 3

Ryan White CARE Act of 1990. P.L. 101-381 § 2 Purpose ....................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 2

## I. INTRODUCTION

Plaintiffs' Opposition does not present any valid arguments why Plaintiffs' First Amended Complaint ("FAC") against Gate Gourmet should not be dismissed in its entirety. As demonstrated by Gate Gourmet in its moving papers Plaintiffs still fail to plead facts sufficient to state any claim against Gate Gourmet arising from their terminations.

With respect to Plaintiffs' claims for Wrongful Termination in Violation of Public Policy, Plaintiffs concede that there is no protected activity giving rise to their claims. Although they now argue that they need not plead a protected activity, Plaintiffs still do not address their inability to plead facts establishing that Gate Gourmet's alleged conduct in terminating, laying off and/or furloughing them (and other employees) violated a *substantial* and *fundamental* public policy that was *well established* at the time of discharge.

With respect to their UCL claim, Plaintiffs still fail to demonstrate that Gate Gourmet violated any particular provision of the CARES Act, nor do they allege facts to establish that their terminations were the result of any "unfair" or fraudulent business practice by Gate Gourmet under the UCL. Plaintiffs further have not provided any authority that actually supports their continued argument that they may recover as restitution unearned "back pay" or that they have standing to seek disgorgement of profits and funds allegedly obtained by Gate Gourmet under the CARES Act. Plaintiffs further completely ignore this Court's prior Order dismissing their UCL claim (in part) because such recovery is not available under the UCL. In addition, Plaintiffs have not (and cannot) demonstrate that damages are insufficient to remedy the harms they allegedly suffered as a result of their terminations and they do they plead any new facts in their FAC to support their contention that they (and other employees) will suffer irreparable harm in the absence of injunctive relief. Accordingly, their claims for violation of the UCL, including their claims for restitution and injunctive relief, must be dismissed.

Finally, Plaintiffs' contention that they may recover attorney's fees under California's private attorney general statute (Cal. Code Civ. Proc. § 1021.5) is flawed because they have not shown that they are seeking to enforce an *important right* affecting the *public interest*. Plaintiffs do not allege facts that, if proven, establish that they (or any other separated Gate Gourmet employee) had a right to retention at the time of separation and, even if they could, Plaintiffs only seek remedies for themselves and other separated Gate Gourmet employees in California who were laid off and/or furloughed during the pandemic.

Accordingly, the Court should dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6) in its entirety, without leave to amend. Plaintiffs were already granted an opportunity to amend and have demonstrated that they cannot cure the defects in their pleading. They still fail to state facts to support their claims against Gate Gourmet for alleged violation of fundamental public policy premised on their terminations. Plaintiffs further cannot plead any purported "unlawful," "unfair" or "fraudulent" business practice arising from Gate Gourmet's receipt of CARES Act funding and they cannot cure their inability to pursue the remedies they seek under the UCL.

## II. ARGUMENT

### A. Plaintiffs Fail To Establish That They Have Sufficiently Pled a Viable Public Policy to Support Their Claim for Wrongful Termination

#### 1. Plaintiffs Concede That Their Claims Do Not Arise From Their Engagement in a Protected Activity

Plaintiffs do not dispute that they have no facts to establish their engagement in protected activity, *i.e.* that they either performed or refused to perform that resulted in their discharge. Plaintiffs instead cite to *Rojo v. Kliger*, 52 Cal. 3d 65, at 90 (1990) and contend that their pleading is sufficient even in the absence of such facts. In *Rojo v. Kliger*, the California Supreme Court opined that an employee could potentially bring a claim for wrongful termination in violation fundamental public policy without having

2

pled that the employer "coerced" the employee to commit an act that violates public policy or restrained an employee from exercising a fundamental right, privilege or obligation.[1]  Notwithstanding, even if such a claim is plausible, it must be premised on the existence of a public policy.  Here, the FAC is still defective because Plaintiffs have not pled facts that (if proven) establish that Gate Gourmet's conduct in terminating their employment violates public policy.

In *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980), the California Supreme Court recognized an exception to the general rule, codified in California Labor Code § 2922, that employment may be terminated at will by an employer or an employee, without cause.  The Court in *Tameny* held that an employee who has suffered damages as a result of a discharge in violation of public policy "may maintain a tort action for wrongful discharge against the employer." *Id*. at 178.  However, the judicially created tort of wrongful termination in violation of public policy must still be based on a discharge *that violates fundamental public policy*.  See *Rojo v. Kliger*, 52 Cal. 3d 65, 91 (1990) ("an action for wrongful discharge will lie when, as here, the basis of the discharge contravenes a fundamental public policy.) Also see, *e.g.*, *Silquero v. Creteguard, Inc*., 187 Cal. App. 4th 60, 67 (2010) ("the issue before us … 'is whether there exists a … fundamental public policy forbidding plaintiff's discharge.")

Here, as is discussed below (and in the moving papers), the FAC still fails to state a claim for violation of fundamental public policy because Plaintiffs fail to identify an actual statute, law, regulation or constitutional provision that was purportedly violated by Gate Gourmet's conduct in terminating Plaintiffs' employment (and the employment of other employees) pursuant to a reduction in force.

---

[1] The Court in *Rojo v. Kliger,* however, concluded that the plaintiffs had sufficiently pled that they were terminated for refusing to engage in conduct that violated fundamental public policy (*i.e.*, they refused non-consensual sexual acts) and in retaliation for attempting to exercise a fundamental right to be free from sexual assault and harassment.

3

## 2. Plaintiffs Still Fail To Articulate Any "Substantial" Or "Fundamental" Public Policy, "Firmly Established" At The Time Of Discharge, That Was Allegedly Violated By Gate Gourmet

Plaintiffs correctly note that no public policy can give rise to a wrongful discharge claim unless it is one "one about which reasonable persons can have little disagreement, and which was 'firmly established' at the time of discharge." (Opposition 11:28-12:2, citing and quoting *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 668 (1988)). However, they fail to adequately describe a "public policy" which Gate Gourmet's alleged actions purportedly violated nor do they argue that such policy was "firmly established" at the time of their discharge.

Although Plaintiffs contend that "maintaining employment and other benefits, including health benefits, during a pandemic" is a public policy (See Opposition, 14:13-16) such articulated policy falls far short of the "firmly established" public policy required to support Plaintiffs' wrongful termination claim.[2] Plaintiffs further allegations that "Defendant was aware of the purpose of the CARES Act" and that the "airline industry was singled out for aid" are unavailing as they do not establish that Gate Gourmet's conduct in laying off Plaintiffs violated any law, much less a "firmly established" public policy. While there is no doubt that the COVID-19 pandemic has given rise to unprecedented economic tumult throughout the nation, forcing a broad swath of private employers to make difficult economic decisions, including laying off workers due to decreased revenue, such unprecedented times cannot immediately give rise to a "firmly established" public policy, as Plaintiffs claim here.

Here, Plaintiffs' reference to the CARES Act's conditioning of financial assistance to audits and clawbacks (in the event a recipient fails to honor its assurances made under Section 4114) cannot save Plaintiffs' claims as Plaintiffs fail to plead any facts to

---

[2] As stated in Gate Gourmet's Motion to Dismiss, Section V.B.2, there is no statutory or constitutional provision purporting to prevent Gate Gourmet from terminating or furloughing its employees. Nor have Plaintiffs identified any in their Opposition.

establish that Gate Gourmet failed to honor assurances it allegedly made as a condition of its receipt of CARES Act funds. Absent facts that (if proven) establish a specific law or statute that Gate Gourmet violated by terminating Plaintiffs' employment, their claims for violation of public policy are subject to dismissal. See *Ali v. L.A. Focus Publication*, 112 Cal. App. 4th 1477, 1487 (2003) ("To prevail on a claim for wrongful termination in violation of public policy, the employee must identify a policy allegedly violated that is both "substantial" and "fundamental" and rooted in constitutional or statutory law.") disapproved on grounds in *Reid v. Google, Inc*. 50 Cal. 4th 512, 527 (2010).

Plaintiffs' further recitation of various government actions taken during the pandemic are of no value in support of an alleged public policy against private employers terminating their employees in such times, particularly where so many private employers have been forced to reduce their workforce. Also, Plaintiffs' appeal to the Ryan White Comprehensive AIDS Resources Emergency Act ("Ryan White CARE Act") is inapposite, and it is unclear why the Plaintiffs attempt to draw a connection. Plaintiffs simply allege that "[t]he facts [sic] that action was taken at various government levels at the same time show that a public policy of supporting employment during a pandemic was well-established and which reasonable persons can have little disagreement." (See Opposition at 15:3-5.) Despite this contention, Plaintiffs do not allege that the Ryan White CARE Act actually protected employment in any way. Indeed, the Ryan White CARE Act does not support employment at all.[3] Insofar as Plaintiffs' intent is to analogize to other government actions taken during the AIDS epidemic, Plaintiffs do not point to any government action, regulation or public policy arising during that time which would restrict an employer's ability to terminate its employees during times of economic

---

[3] The stated purpose of the Ryan White CARE Act is "to provide emergency assistance to localities disproportionately affected by the HIV epidemic and to make financial assistance to States and other public and private nonprofit entities to provide for the development, organization, coordination, and operations of more effective and cost-efficient systems for the delivery of essential services to individuals and families with HIV disease" (Ryan White CARE Act of 1990. P.L. 101-381 § 2 Purpose.)

5

hardship caused by a pandemic.

In addition, Plaintiffs do not even attempt to analyze whether their purported public policy is "substantial and fundamental," an essential element of their claim.[4] Nor have they met their burden to show that Gate Gourmet violated a substantial and fundamental public policy which was "*firmly established*" at the time of discharge. (See Motion Section V.B.4.) Indeed, it is difficult to conceive how Plaintiffs could even contend that the CARES Act constitutes "firmly established" public policy when they allege that the CARES Act was signed into law on March 27, 2020 — seven days after Plaintiff Ferdinand's termination and one day before Plaintiffs Scott and McCoy's terminations (see FAC ¶¶ 14-16). Accordingly, Plaintiffs' claims for wrongful termination in violation of public policy must be dismissed for this reason as well.

### B. Plaintiffs' Opposition Still Fails to Establish that They Have Adequately Pled a Claim For Violation of the UCL

In their Opposition, Plaintiffs argue that their FAC adequately pleads both the "unfair" and "unlawful" prongs of the UCL analysis. To the contrary, their allegations fail to satisfy either prong. With respect to the "unfair" prong of the UCL analysis, Plaintiffs assert that there are "multiple standards which exist to determine whether a business practice is considered 'unfair,'" and that the official standard is unsettled as a result. (See Opposition at 16:9-26.) However, they do not provide any potential standard, or even factors, for the Court to consider in determining whether their FAC states sufficient facts to state a claim under the "unfair" prong. Instead, Plaintiffs attempt to rely on this Court's purported "maximum discretion" to address unfair business practices in violation of the UCL. (See Opposition *Id*.)

---

[4] In contrast, Gate Gourmet engaged in a full analysis of the "substantial and fundamental" prong in its Motion to Dismiss. (See Motion Section V.B.5.) Plaintiffs have not shown that any substantial or fundamental public policy is implicated under the applicable standard, and have neither contested Gate Gourmet's analysis, nor provided an alternative standard.

It is well established, however, that "[a]lthough the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). "Unfair" conduct is conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 187.

Plaintiffs have not alleged or demonstrated that Gate Gourmet's conduct in laying them off satisfies any of these factors. In addition, while it is true that a trier of fact may find an "unfair" business practice violates California's UCL (even in the absence of a violation of an underlying law), to state an actionable claim, Plaintiffs must still allege facts that, if proven, establish that the harm they allegedly suffered (*i.e.*, damages resulting from their loss of employment) was caused by Gate Gourmet's engagement in an "unfair" business practice. (See Bus. & Prof. C. § 17204 (individual must have "suffered injury in fact" and "lost money or property *as a result of* the *unfair competition*") (emphasis added).) These fundamental pleading requirements — which Plaintiffs fail to meet in their FAC —are confirmed by Plaintiffs' cited authority. See *Smith v. Chase Mortg. Credit Grp.*, 653 F. Supp. 2d 1035, 1045-46 (E.D. Cal. 2009) (no unfair competition where defendant's violation of an internal policy was not the cause of Plaintiffs' harm).

Notably, in *Smith v. Chase Mortg. Credit Grp.*, 653 F. Supp. 2d 1035 (E.D. Cal. 2009), a case relied on by Plaintiffs to support their argument that a UCL violation may arise from an entity's own internal policies, the Court did not find a violation of the UCL. In *Smith*, the defendant/lender violated certain internal policies tending to protect debtor interests. Although the Court stated in *dicta* that an internal policy could conceivably serve as the basis for an unfair business practices claim, they did not find a violation of

7

the UCL because the plaintiff suffered no demonstrable harm or impact *stemming* from the defendant/lender's alleged failure to follow its internal policy. *Id.* at 1145-46.

Plaintiffs do not dispute that their pleading of a claim for violation of the UCL necessarily requires that they plead facts establishing that the harm they allegedly suffered was *caused* by Gate Gourmet's engagement in an "unfair" business practice . Instead, they erroneously contend that they have satisfied the pleading standards and that Gate Gourmet is unconvinced by the gravity of the harm which they suffered.[5] Yet, Plaintiffs have failed to plead any facts to establish a causal link between Gate Gourmet's engagement in an alleged "unfair" business practice and their terminations. The mere fact that Gate Gourmet received CARES Act funds and that Plaintiffs (and other employees) were laid off after (and prior to) the passage of the CARES Act is insufficient to plead that their terminations were the result of Gate Gourmet's engagement in an unfair business practice. See *Andrews v. Plains All American Pipeline, L.P.*, 2017 WL 10543401, at *14 (C.D. Cal August 25, 2017) (unfair competition requires that the alleged violation have caused the injuries of the plaintiff).

Further, although Plaintiffs plead that their loss of employment caused them to suffer harm, they do not adequately plead that any purported *unfair* conduct by Gate Gourmet caused their layoffs. Thus, Plaintiffs have not (nor can they) plead facts establishing a "causal link" between their terminations and Gate Gourmet's engagement in any "unfair" business practice.

Plaintiffs' further contention that their allegations satisfy the "unlawful" prong of the UCL analysis also fails. Contrary to Plaintiffs' assertions, it is Plaintiffs' burden —

---

[5] (Opposition at 17:4-14.) Specifically, Plaintiffs contend that they state a claim through their allegations that the CARES Act was in response to the COVID-19 pandemic in response to "the economic effects, including mass unemployment," that Gate Gourmet applied for and received money through the CARES Act, and that Gate Gourmet's layoffs "will cause irreparable harm to GATE GOURMET's affected employees, including eliminating employer sponsored health insurance during a pandemic and during a time when unemployment is at an all-time high." (FAC ¶¶ 17-19, 21-22, 26.)

8

DEFENDANT GATE GOURMET'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
70501792v.1

not Gate Gourmet's burden — to "explain how applying for and receiving money for the purpose of paying employees and also terminating employees is not a violation" of the CARES Act. (Opposition at 18:2-6); see also *Cambridge Electronics Corp.*, 227 F.R.D. 313, 337 (2004) (a plaintiff claiming violation of the UCL bears the burden of explaining the manner in which the practices are allegedly unlawful, unfair or fraudulent, and what harm it suffered as a result of those practices); *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1342 (2003) ("We conclude there is no basis in California law to shift the burden of proof to a defendant in … [an] unlawful competition action"). Plaintiffs have not plead facts to establish that Gate Gourmet violated any provision of the CARES Act. To the extent Plaintiffs contend that Gate Gourmet violated the CARES Act by terminating their employment after allegedly receiving "assurances" that it would receive economic relief, their claim is flawed. (FAC ¶¶ 23-26.) Even accepting Plaintiffs' allegations as true (which Gate Gourmet disputes), the CARES Act does not limit Gate Gourmet's right to terminate or furlough its employees prior to entering into an agreement for receipt of CARES Act funds or after September 30, 2020.[6]

Thus, Plaintiffs' claim for violation of the UCL must fail.

### C. Plaintiffs Still Lack Standing to Pursue Equitable Relief Under the UCL

#### 1. The FAC Still Fails to Identify any Irreparable Harm to Support a Claim for Injunctive Relief Under the UCL

Plaintiffs concede that "[a] plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available." (see Opposition 18:16-21, quoting *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015.) Yet, Plaintiffs still fail to plead any facts to support their argument that the alleged harm they suffered, *i.e*., loss of wages and benefits as well as emotional distress cannot be compensated by the legal remedy of compensatory damages.

---

[6] Plaintiffs do not argue in their Opposition that Gate Gourmet's conduct violates the fraudulent prong of the UCL.

9

DEFENDANT GATE GOURMET'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

70501792v.1

Although Plaintiffs contend in their Opposition that "nothing else [other than injunctive relief] will be able to address Plaintiffs' injuries if the COVID-19 pandemic surges again," Plaintiffs fail to identify the purported "injuries" they are referring to. (Opposition 19:18-20.) To the extent Plaintiffs are referring to the possibility that they could suffer a loss of future earnings in the event of another layoff, they fail to establish that such harm is likely to recur or allege any facts to support their contention that "Defendant is treating is workforce as an on-demand/per diem…". (Opposition 19:13-15.) Nor have Plaintiffs established that damages will be insufficient to remedy any claims arising from a loss of employment. Indeed, this Court has already ruled (in its Order granting Gate Gourmet's Motion to Dismiss the Complaint) that Plaintiffs failed to plead facts sufficient to support their claim for injunctive relief:

> "Because plaintiffs have not adequately alleged a real or immediate threat that Plaintiffs will be subject to illegal conduct by defendant in the future or that plaintiffs have suffered injuries that are compensable by restitution, plaintiffs' lack standing to pursue their UCL claim."

(DKT. 29 at p. 14.) Plaintiffs' have failed to remedy this pleading defect in their FAC.

### 2. Plaintiffs' Claim For Restitution/Disgorgement is Also Contrary to the Court's Order Dismissing the Complaint

In their Opposition, Plaintiffs continue to argue that they are entitled to recover restitution under the UCL in the form of "back pay" and disgorgement by Gate Gourmet of alleged profits and monies received by Gate Gourmet under the CARES Act. Yet, this Court has already ruled that Plaintiffs are not entitled to such relief under the UCL:

> "*[P]laintiffs have not alleged the type of injuries that are compensable by restitution. To the extent that plaintiffs seek to recover 'profits and gains resulting from' defendant's decision to lay off its employee's despite receiving federal payroll support through the CARES Act, plaintiffs have not pled facts demonstrating a vested ownership interest in those funds*

10

> *that would establish a right to restitution.* Without more, plaintiffs allegation that defendant received payroll support funding from the government is not sufficient to establish that defendant has 'taken' money or property or is otherwise 'in possession of funds rightfully belonging' to plaintiffs. See <u>Asghari</u>, 42 F. Supp. 3d at 1324. *Moreover, 'non-restitutionary disgorgement' of funds unlawfully or unfairly obtained from a third party – such as the Department of Treasury – 'is not an available remedy in an individual action under the UCL.'* <u>Korea Supply Co. v. Lockheed Martin Corp</u>., 29 Cal. 4th 1134, 1149, 63 P.3d 937 (2003). Likewise, although California courts have sustained claims for restitution under the UCL where plaintiffs seek to recover *earned* wages, such as unpaid overtime, see <u>Cortez v. Purolator Air Filtration Prod. Co.</u>, 23 Cal. 4th 163, 178, 999 P. 2d 206 (2000), *a claim for compensation for future, as yet unearned, wages is a claim for 'monetary damages' that is not recoverable under the UCL*. See <u>Voris v. Lampert</u>, 7 Cal. 5th 1141, 1154 n. 9, 446 P. 3d 284, 293 (2019), reh'g denied (October 23, 2019) ("claims for compensation for work *already performed* qualify as claims for "salaries [or] wages," whereas claims for *unearned* compensation fall under the category of 'monetary damages.'")

(DKT. 29 at p. 14, some emphasis added.) Yet, notwithstanding the Court's well-reasoned ruling, Plaintiffs continue to seek this same relief in their FAC. Accordingly, Plaintiffs' claims for purported violation of the UCL, including their claims for restitution and disgorgement, must now be dismissed, without leave to amend.

### D. Plaintiffs May Not Recover Attorney's Fees Under the Private Attorney General Act in Connection with Either of Their Claims

Plaintiffs do not dispute that attorney's fees are not recoverable under the UCL and that they are further generally not available where they are not expressly provided for by

11

statute. Plaintiffs instead argue unconvincingly that they may nonetheless recover attorney's fees pursuant to California's Private Attorney General Act, Cal. Code Civ. Proc. § 1021.5. Plaintiffs, however, fail to even mention Section 1021.5 as their basis for attorney's fees in their FAC, let alone plead facts to support recovery of attorney's fees under Section 1021.5.

Plaintiffs instead merely argue in a conclusory manner that "there is a significant benefit to the public interest in holding Defendant accountable for the terminations during a pandemic after the receipt of large sum federal funds through the CARES Act." (Opposition p. 21:5-7.) Notably, however, the FAC contains no facts as to when Gate Gourmet allegedly received CARES Act funds. Nor do Plaintiffs establish in their Opposition that their prosecution of this action will result "in the enforcement of an important right effecting the public interest" or confer a "significant benefit" *on the general public or a large class of persons*. To the contrary, even if Plaintiffs were to prevail on their individual and putative class claims in their entirety, they would still only confer a benefit on themselves and those Gate Gourmet employees in California who were terminated or furloughed by Gate Gourmet after the passage of the CARES Act. It is therefore not surprising that Plaintiffs do not even attempt to address any of Gate Gourmet's authority in their moving papers holding that a plaintiff's assertion of their claims on behalf of a putative class is insufficient in itself to recover attorney's fees under Section 1021.5. (See Motion at 23:3-14).

Accordingly, Plaintiffs' claims for recovery of attorneys' fees must be dismissed.

### E. Leave To Amend Should Be Denied

"Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility … or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (court need not

12

expressly state granting leave to amend would be futile if this reasoning is apparent from the record).

Here, the deficiencies in Plaintiffs' FAC are not issues of inartful drafting that could be cured by further amendment. If so, Plaintiffs would have already added facts upon being granted leave to amend their Complaint to show that Gate Gourmet violated some fundamental obligation owed to them which it undertook by requesting relief under the CARES Act. Plaintiffs also requested (and were granted) a three-week extension of time to amend their Complaint so that they could obtain documents from the Department of Treasury. Although Plaintiffs are now in receipt of these documents, they still have not identified any facts they can allege that if proven, would establish a claim against Gate Gourmet. Gate Gourmet has discussed with Plaintiffs the deficiencies of their pleading, and Plaintiffs have had an extensive opportunity to craft a legally viable pleading. Yet they are unable to do so.

Accordingly, the FAC should now be dismissed with prejudice.

## III. CONCLUSION

As shown above, Plaintiffs' pleading defects remain in their claims even after being granted leave to amend. Given that Plaintiffs' pleading defects are incurable, Gate Gourmet respectfully requests that this Motion be granted, without leave to amend.

DATED: May 10, 2021            SEYFARTH SHAW LLP

By: */s/ Jill A. Porcaro*
Diana Tabacopoulos
Jill A. Porcaro
Attorneys for Defendant
GATE GOURMET, INC.